16 505
61 36

## CROUCH *against* CARRIER and another.

Where *A*, the authorized agent of *B*, agreed with *C*, on the 28th of *April*, to sell to *C* a yoke of oxen belonging to *B*, in the possession of *A*, at a certain price, which was paid, by being indorsed on a note which *C* held against *B*; *C* turned the oxen round, but no otherwise took possession of them; and *A*, pursuant to an understanding with *C*, retained them in his possession, and used them in accomplishing a few specified purposes, until the 1st of *April* following, when they were attached by *D*, as the property of *B*; in an action of trespass brought by *C* against *D*, it was held, that there was no sufficient explanation of the continued possession and apparent ownership of the property, after the sale; consequently, the sale was fraudulent and void; and a verdict for *C*, founded on these facts, was a verdict against evidence, which ought to be set aside.

THIS was an action of trespass, against *Ozem Carrier* and *Amos D. Niles*, for the taking of a yoke of oxen, claimed by the plaintiff as his property.

The cause was tried at *Norwich*, *March* term, 1844, before *Church*, J.

The plaintiff claimed title to the oxen in question, by virtue of a sale thereof from *Henry M. Holdridge*, by his agent *Henry Holdridge*, on the 28th of *March*, 1842. The only witness offered by the plaintiff in support of his claim, was said *Henry Holdridge*, who testified as follows: That he, with his son *Henry M. Holdridge*, occupied a farm in *Colchester*, belonging to the defendant *Niles*, for the rent of which they had given their note for 110 dollars, dated *April* 1st, 1841, payable in one year; that in *May*, 1841, *Henry M. Holdridge* pur-

chased these oxen of the plaintiff, at the price of 75 dollars, for which he gave the plaintiff his own note ; that the witness had before spoken to the plaintiff about the purchase of the oxen, and the plaintiff had agreed to deliver them to the witness at *Norwich,* and, at the same time, to receive from him said note ; that in pursuance of such agreement, the plaintiff delivered the oxen to the witness at *Norwich,* and received from him said note, which he brought with him for that purpose ; that the witness took the oxen home to *Colchester,* and put them on said farm occupied by him and his son, and used them thereon ; that *Henry M. Holdridge* left *Colchester* in the fall of the same year, and went to *East-Lyme* to teach a school, and the witness transacted business for him, during his absence, and used the oxen in question, with other oxen belonging to him, during that fall and the winter following ; that *Henry M. Holdridge* never returned to *Colchester,* but during the winter after the purchase of the oxen, he, by letter addressed to his father, the witness, dated *January* 6th, 1842, requested him to dispose of his stock, as he was going into other business, and was short of hay ; that one of the oxen was unruly, and the witness, some time in *March,* 1842, spoke to the plaintiff about them, and requested him to take them back ; that on *Wednesday,* the 28th of that month, the witness, being on his way to *Hebron,* transporting a load of goods, with the oxen in question, and two other yokes of oxen in the same team, which he also used on said farm, and passing through the village of *Colchester,* accidentally met the plaintiff, without any previous appointment, near the store of *S. C. Loomis,* and then and there agreed with him to sell the oxen in question back to him, for the sum of 65 dollars, to be indorsed upon the note then held by him against *Henry M. Holdridge ;* that this sum was indorsed accordingly on said note, in *Loomis's* store ; that it was then agreed, that the witness might retain the use and possession of the oxen to carry his load to *Hebron,* also to carry a load of rags from *Salem* to *Colchester,* and until after he had moved, he being about to remove his family from *Colchester* to *Hebron ;* that the plaintiff resides about three miles from said *Loomis's* store ; that after the sale, the plaintiff turned the cattle round, which was the only act of delivery or receiving of the cattle ; that the witness kept them and used them as aforesaid until *Sun-*

*day* next after said sale, on which day he returned with them from *Hebron* or *Chaplin;* that the witness sold the oxen as the property of *Henry M. Holdridge;* that he never afterwards offered to sell them to any one, though some persons inquired the price of them; that they were attached by the defendant *Carrier,* who was a constable, at the suit of *Niles,* the other defendant, brought upon the aforesaid note given by the witness and *Henry M. Holdridge* for rent; that the attachment was served on *Monday* morning, being the first *Monday* of *April,* 1842; that these oxen were then, with other cattle belonging to *Henry M. Holdridge,* in the care and under the controul of the witness on said farm; that he forbade the defendants' taking the oxen, and informed them, when so attached, that they had been sold to the plaintiff; that soon after the attachment, and on the same day, he informed the plaintiff, that the oxen had been attached and taken away, by the defendants; that the plaintiff, on the same day, demanded the oxen of *Niles,* one of the defendants, who said he would not give them up, if it cost him 500 dollars.

The defendants introduced the testimony of *George H. Niles, S. C. Loomis, Christopher Brown, Justus W. Williams,* and *Ralph Carrier,* to prove certain declarations of *Henry Holdridge* and matters of fact, inconsistent with his testimony in this case.

The court charged the jury, that the only question in the case was, whether the oxen in controversy, when they were attached by the defendants, were the property of the plaintiff, so that they could not be taken for the debt of *Henry M. Holdridge;* and that this depended on the validity of the sale, made by the witness *Holdridge,* to the plaintiff. If the jury did not believe the testimony of that witness regarding such sale, they ought to return a verdict for the defendants. Further, it is not sufficient to constitute a legal and valid sale of such personal estate as oxen, as against the attaching creditors of the vendor, that a *bona fide* and adequate price had been paid for them; but it is also necessary that the vendee should take and retain possession of them, so that they cannot, without his consent, go back into the possession of the vendor, to be retained, used and controuled by him, or his agent, in the same manner as before the sale. If the jury, in

New-London,
July, 1844.

Crouch
v.
Carrier.

the present case, believed, that the vendor, or his agent, was permitted, by the plaintiff, to keep possession of and use the oxen, this afforded a strong presumption that such pretended sale was fraudulent and void; and it is not sufficient to rebut such presumption of fraud, that the oxen were retained in the possession and use of the vendor, or his agent, merely for his own convenience and accommodation, for a specified purpose, or for a limited time.

The jury brought in a verdict for the plaintiff. The court, believing that the jury had mistaken the evidence in the cause, returned them to a second consideration thereof; and on such second consideration, they adhered to their verdict in favour of the plaintiff; which was then accepted by the court, and recorded.

The defendants thereupon moved for a new trial, on the ground that the verdict was against the evidence in the cause.

*Strong*, in support of the motion, after remarking, that it was incumbent upon the plaintiff to make out a title to the oxen, by a valid transfer, contended, 1. That the testimony of *Henry Holdridge*, the only witness for the plaintiff, was not entitled to credit. The counsel here remarked upon the manifest bias of the witness in favour of the plaintiff's claim; upon the discrepancies between different parts of his testimony; and upon its direct conflict, in sundry particulars, with the evidence introduced by the defendants.

2. That upon the case stated by the plaintiff's witness, there had been, at the time of the attachment, and as against the attaching creditor, no valid transfer of title. The possession of the property had not been changed; and there was no reason for the seller's retaining the possession and use, except his *convenience*. This was not sufficient to repel the presumption of fraud. *Carter* & al. v. *Watkins*, 14 *Conn. R.* 240. *Osborne* v. *Tuller* & al. *Id.* 529. These authorities are recent and decisive.

*Foster*, contra, contended, 1. That the power of setting aside verdicts as being against evidence, is to be exercised with very great caution, and is never advised, except where the verdict is palpably against the evidence, and where manifest injustice has been done. *Yale* v. *Yale*, 13 *Conn. R.* 185.

*Bulkley* v. *Waterman, Id.* 328. *Bacon* v. *Parker,* 12 *Conn. R.* 212. *Palmer* v. *Hyde,* 4 *Conn. R.* 426. *Burton* v. *Thompson,* 2 *Burr.* 664. 1 *Sw. Dig.* 782.

2. That upon the uncontroverted facts detailed in this case, the evidence was abundantly sufficient to sustain the verdict. The plaintiff bought the oxen at their full value, the consideration paid being the discharge of an honest debt, and then left them, for a few days, in the possession of the agent of the vendor, to be used by him for certain specified purposes; such an arrangement being for the joint advantage of the plaintiff and the vendor's agent. The defendant *Niles* then takes the property on a writ against the vendor, and converts it to his own use. Under these circumstances, so far from being a case of injustice, justice demands that the defendants should pay the plaintiff the damages he has sustained.

3. That the leaving of property, after sale, in the hands of the vendor, is but *prima facie* or presumptive evidence of fraud. This presumption, like all others, may be rebutted; and whether it is done satisfactorily or not, in any given case, is a question, not of law, but of fact, and as such must be determined by the *jury. Swift* v. *Thompson,* 9 *Conn. R.* 63. *Toby* v. *Reed, Id.* 216. *The Oriental Bank* v. *Haskins,* 3 *Metc.* 332. *Hanford* v. *Artcher,* 4 *Hill,* 271.

4. That if the *court* is to decide this question, the facts in the case sufficiently explain the non-delivery of the property. *Wheeler* v. *Train,* 3 *Pick.* 255. 257.

5. That the ground assumed by the defendants would have made it necessary for the judge, on the trial, to direct the jury to render their verdict for the defendants, though all the testimony introduced by the plaintiff was found to be true. Such direction was not asked from the court; and had it been given, it would have been a misdirection.

Church, J. In considering this motion, we shall confine ourselves to that part of the plaintiff's case, which was proved by his own witness, *Henry Holdridge,* and not disputed by the defendants; and thus avoid any inquiry into the weight of conflicting evidence.

It is to be presumed, that this witness stated the facts as favourably for the plaintiff as truth would justify. The oxen in dispute had been purchased of the plaintiff, by *Henry M.*

*Holdridge*, and placed upon the farm in the joint occupancy of himself and his father, the witness, and, together with other cattle there, had been used in the cultivation of the farm, as well as for other purposes, by the witness, in the absence of his son, who was temporarily engaged in another town.

There was no actual delivery of the cattle to the plaintiff, at the time of the sale, nor at any other time; but by an agreement between the parties, they remained with *Henry Holdridge*, to be used on the farm as before, or for his personal accommodation. They were kept and used on the farm as formerly, and were there, when they were attached by the defendants, to secure a debt against *Henry M. Holdridge*.

Although *Henry Holdridge*, the father, was an agent for his son in making the sale, yet neither the use nor the possession of the oxen was changed; every thing remained as before; nor was any legally sufficient reason given nor pretended, why they continued under the same controul and management.

The jury, in opposition to the explicit instructions of the court, have attempted to sustain this pretended sale, upon what they probably supposed was the *bona fides* of the matter, without regard to the continued possession and apparent ownership of the property, and without any other explanation or excuse for such possession, than the personal accommodation of *Henry Holdridge*, the agent. This is an insufficient explanation; and the verdict is in certain opposition to the legal operation of the facts which the plaintiff himself claims to be true, and which are proved by his own witness; and it cannot be sustained, without an abandonment of well settled principles, as recognized in all our cases, and especially in the late cases of *Swift* v. *Thompson*, 9 *Conn. R.* 63. *Mills* v. *Camp*, 14 *Conn. R.* 219. *Carter* v. *Watkins, Id.* 240. 243, 4. *Osborne* v. *Tuller, Id.* 530.

We think a new trial ought to be granted.

In this opinion the other Judges concurred.

New trial to be granted.