## JOHN NORTON *vs.* LEVI DOOLITTLE, JR.

A son working with his father on a farm occupied by the latter, and living with his family on the farm in a part of the same house with his father, sold a yoke of cattle which he owned and which had been for two years used on the farm. The purchase was made in good faith, but the cattle after being delivered to the purchaser at his house and kept by him a day or two, were leased and delivered by him to the father, and placed back, with the assent of the purchaser, upon the same farm and used in the same manner as before. They so remained for more than a year, when a creditor of the son attached them as his property. Held, that they were liable to such attachment.

It is not enough that there is an actual delivery, and an actual change of possession as between the vendor and vendee, so long as the property, without legal excuse, is so placed back into the same condition and the same apparent relation to the vendor, that there is no such manifest and continued change of possession as would indicate to the world that there has been a change of title.

REPLEVIN, for a yoke of cattle, ox-sled, yoke, and other articles of personal property used with the cattle, attached by the defendant as the property of one Seth E. Frost. The following facts were found by the superior court.

The plaintiff, on the 27th of December, 1860, purchased of Seth E. Frost the articles described in the declaration. The sale was made in good faith, upon a fair consideration, and the

articles were delivered by Frost to the plaintiff at his house in the town of Bristol, which delivery, the plaintiff said, was in order to make the sale valid. Within a day or two after the sale and delivery the plaintiff let the property to Sylvester Frost, the father of Seth E. Frost, for the use of which he was to receive the interest on the money paid for the same by the plaintiff, to use on a certain farm in the town of Southington, belonging to the plaintiff, of which Sylvester Frost was in possession as the tenant of the plaintiff. Of this farm Sylvester Frost was the former owner, but in 1853 he made an assignment of his property for the benefit of his creditors, and the farm was sold by the order of the court of probate, and purchased by the plaintiff, who then and previously held a mortgage thereon; but Sylvester Frost, by an arrangement with the plaintiff, has always continued in possession of the same, paying an annual rent to the plaintiff, until a few months since, when a conveyance of it was made by the plaintiff to the wife of Sylvester Frost who is the plaintiff's sister. Seth E. Frost has all the time since the year 1856 occupied, and kept house in, a part of the dwelling-house on the farm, and paid rent therefor to Sylvester Frost, who occupied the other part. For a year or two prior to September, 1859, Seth E. Frost was in company with Sylvester Frost in butchering and making candles, and also worked with him on the farm, and owned jointly with him certain personal property, and during that time he purchased the cattle in question, which he owned individually, and which were kept and used on the farm constantly, with the exception of the day or two they were in possession of the plaintiff at the time of the sale to him, until the defendant attached them, and during all that time were the principal cattle used and kept on the farm. In September, 1859, Seth E Frost entered into the butchering business in copartnership with one Clark, and so continued till March 16, 1861, when they sold out, and during the continuance of that business Frost & Clark occupied one of the barns on the farm for a slaughter house and other purposes, but during that time Seth E. Frost had nothing to do with the farm or the work on it, or with the use of the cattle or other prop-

erty in controversy in this suit. On the 8th of February, 1862, the defendant brought an action against Seth E. Frost, and attached as his the property in question, and the plaintiff thereupon brought this suit. At the time of the attachment the cattle and other articles attached were being used by Seth E. Frost in the employment of Sylvester Frost, into which employment as a hired man he entered about the first of May, 1861, and as such worked on the farm and generally used and drove the cattle, but they were sometimes also driven by other hired men. He never had the management, control or possession of the farm, and when he was employed on it it was always in the capacity of hired man to Sylvester Frost, but there was never any definite contract between them with regard to his compensation. And at the time of the sale of the property by him to the plaintiff he did not contemplate insolvency, and was not actually insolvent until about the first of March, 1861. There was no evidence to show that when the plaintiff permitted Sylvester Frost to take the cattle back upon the farm it was with the expectation that Seth E Frost was to have the managment of the farm or the possession of the cattle and other property in question.

Upon these facts the case was reserved for the advice of this court.

*Mitchell* and *E. Johnson,* for the plaintiff, cited *Swift* v. *Thompson,* 9 Conn., 63 ; *Talcott* v. *Wilcox,* id., 134 ; *Toby* v. *Reed,* id., 216 ; *Carter* v. *Watkins,* 14 id., 240 ; *Kirtland* v. *Snow,* 20 id., 23 ; *Partelo* v. *Harris,* 26 id., 480 ; *Sanford Manufacturing Co.* v. *Wiggin,* 14 N. Hamp., 441 ; *Damon* v. *Bryant,* 2 Pick., 411 ; *Carter* v. *Bennett,* 4 Florida, 283 ; *Lake* v. *Billers,* 1 Ld. Raym., 733 ; *Savage* v. *Smith,* 2 W. Bla., 1104.

*Lounsbury* and *S. R. Hull,* for the defendant, cited *Burrows* v. *Stoddard,* 3 Conn., 160 ; *Patten* v. *Smith,* 4 id., 450 ; *Same* v. *Same,* 5 id., 196 ; *Swift* v. *Thompson,* 9 id., 63 ; *Talcott* v. *Wilcox,* id., 134 ; *Mills* v. *Camp,* 14 id., 219 ; *Carter* v. *Watkins,* id., 240 ; *Osborne* v. *Tuller,* id., 529 ;

*Crouch* v. *Carrier*, 16 id., 505 ; *Kirtland* v. *Snow*, 20 id., 23 ; *Potter* v. *Payne*, 21 id., 377 ; *Lake* v. *Morris*, 30 id., 201 ; *Webster* v. *Peck*, 31 id., 495 ; *Kidd* v. *Rawlinson*, 2 Bos. & Pul., 59.

BUTLER, J. In this case judgment must be advised for the defendant. In all its material features it is like the case of *Crouch* v. *Carrier*, 16 Conn., 505, as will be readily seen by comparing them.

First, it is analogous in respect to the ownership, use, and possession before the sale.

In this case, as in that, a son living in a part of the same house and working on the same farm with his father, purchased a pair of cattle and took them upon the farm, where they were kept and used in cultivating it until attached as the property of the son. Here the father was the lessee of the farm, and the son was in partnership with him in the business of butchering and worked with him in cultivating the farm. In *Crouch* v. *Carrier* both father and son were lessees of the farm, and worked it together when the cattle were purchased. In this case the son ceased to be a partner with his father or to work on the farm for a time, but returned to the latter employment before the cattle were attached. In *Crouch* v. *Carrier* the son ceased work with his father before the sale of the cattle and did not return to that employment before the attachment was made. There are thus some slight differences between the cases, but they are immaterial ; for in both cases the cattle were purchased, taken upon the farm and kept there by the son, as his individual property, and the possession and control were retained by him. There was no bailment to the father, and his use was gratuitous and permissive, and without any possession or right of possession as against the son. In the material respects named therefore the cases are alike.

Second, they are analogous in respect to the sale, delivery and subsequent bailment.

In *Crouch* v. *Carrier* the father sold the cattle as agent of the son to an outsider and the purchaser permitted the father

to take them back upon the farm for his, the father's, temporary use, thereby constituting him a " *commodatum* " bailee. Here the son sold the cattle to an outsider and the purchaser permitted the father to take them back on the farm to use for hire, constituting him a " *locatio rei* " bailee. In *Crouch* v. *Carrier* there was a formal delivery but possession was retained for a few moments only, and in this case a delivery but possession retained for a day or two only " to make " (as the finding states) " the sale valid ; " but there was not in either case a possession taken which was intended to be continued. It was equally the understanding and agreement in both cases that the cattle should go back upon the farm for the use of the father.

And third, they are analogous in respect to the vice in the transactions which rendered them void in the law. That vice did not consist in a defective delivery, nor in the want of possession in the vendee as against the vendor, nor in the want of technical possession in the father as bailee of the purchaser and as between them, but in the fact that the property was, without legal excuse, so placed back into the same condition, and the same apparent relation to the son, that the actual possession was not visibly, apparently and continuedly changed from the son to the purchaser, so as to indicate to the world that there had been a change of title. The purchasers in both cases permitted, and when they purchased *intended to permit*, the cattle to go back immediately or very soon, upon the same farm, and, as it was winter or spring, necessarily into the *same stable* or *yard*, to be thereafter kept and used by the same persons and in the same apparent manner as before, and there was to the view of the world no apparent change of ownership, " no actual, visible and continued change of possession " to indicate the change of title and bailment that had taken place. There was nothing in either case to create even a suspicion of change. The neighbors who had seen the cattle kept and used on the farm from the time when the son purchased and took them there as his own property, saw them afterwards kept and continued in the same place, in the same apparent manner, and used as his precisely

as before, and could see nothing to indicate a change of title or possession, and must naturally and rightfully have presumed that the ownership and possession remained the same. And the same is true of the other property which was used with the cattle. Such a sale was properly holden colorable in *Crouch* v. *Carrier*, and must be in this case.

But if that case had never been decided we should on principle have come necessarily to the same result. The rule of law which requires a change of possession is one of policy. Its object is the *prevention* of fraud. It applies both to property attached and to property sold. In *Wells* v. *Camp*, 14 Conn., 219, it was well said of it by Judge Sherman:—" In this state it has justly been considered as wise and salutary, and it is rigidly applied except in certain cases where its application would be impossible or injurious." The *policy* which dictates it and the *prevention* at which it aims, require its rigid application to every case where there has not been an actual, visible, and continued change of possession. It must therefore be applied to cases like this. Where two persons are situated to the view of the world as the father and son were in this case, it is not consistent with the nature and purpose of the rule to permit a secret sale and delivery to an outsider by one, with the understanding that there shall be a bailment and delivery to the other, and a return of the property to the same apparent use and enjoyment. It would be a relaxation of the rule and open a door which it was intended to close, to hold such a bailment a legal excuse for a continuance of the apparent possession, and it would sanction a doctrine by which the rule could in a class of cases be evaded. No prudent officer would have ventured to attach these cattle and other property and leave them in the same yard or stable, merely bailing them to the father to be kept. Nor would any prudent purchaser have done it. The fact that the cattle were delivered and bailed up at Bristol, and kept for a day or two to make the sale valid, can make no difference. They might as well have been driven into the street by the purchaser and then returned. Indeed in the

Norton *v.* Doolittle.

latter case the delivery might have been more public for the neighbors might some of them have observed it.

The rule undoubtedly operates with hardship sometimes upon honest and well meaning men; but it can not on that account be relaxed. It is a *rule*, and must be maintained or abandoned. As the fault is not in the rule, but in those who disregard its just and salutary requirements, it must be maintained.

And as, in applying it, we must look beyond the good faith or the secret technical features of the transaction, so purchasers must learn and understand that if they purchase property and without a legal excuse permit the possession to remain in fact or apparently and visibly the same, or, if changed for a brief period, to be in fact or apparently and visibly restored, and thereafter in fact or apparently and visibly continued as before the sale, they hazard its loss by attachment for the debts of the vendor, as still, to the view of the world and in the eye of the law, as it looks to the rights of creditors and the prevention of fraud, his property. And if they desire as did this plaintiff, at one and the same time to buy the property of the nephew and bail it to the brother in law, they should look at the suspicious character of such a family transaction, and regarding the importance of conforming to a salutary rule of law by an actual and visible and continued change of possession, if both father and son are to remain on the place as before, exchange the cattle purchased and bail the new pair; or better still, let the son sell to whom he will, and the uncle purchase a different pair and bail them to the father. If it is true, as claimed, that the rule operates with hardship upon this plaintiff, it is because he did not exercise ordinary prudence in not conforming to it.

We advise judgment for the defendant.

In this opinion the other judges concurred.