## WILLIAM S. SEYMOUR *vs.* JULIA O'KEEFE.

Hay in a barn was sold by a bill of sale that provided that it should remain in the barn of the vendor until the vendee should see fit to remove it. The vendee endeavored to hire a barn to which to remove it, but did not obtain one till twelve days after. In the meantime the hay was attached by a creditor of the vendor. Held—

1. That the provision in the bill of sale as to the hay remaining in the barn, did not constitute a lease of the barn to the vendee.

2. That the vendee did not take possession within a reasonable time, and that therefore the property was held by the attachment.

TRESPASS *de bonis asportatis;* brought to the District Court

of Litchfield County, and tried to the court, on the general issue, with notice that the defendant claimed to be the owner of the property, before *Foster, J.* Judgment for the plaintiff and motion for a new trial by the defendant. The case is sufficiently stated in the opinion.

*M. W. Seymour*, with whom was *E. W. Seymour*, in support of the motion.

*H. Goodwin* and *F. D. Fyler*, contra.

LOOMIS, J. On the 30th of November, 1874, one Lloyd Humphrey was indebted to the defendant by his promissory note of one thousand dollars, and in part payment thereof he sold to the defendant ten tons of hay, together with other personal property, and gave her a bill of sale in writing as follows:—

"Norfolk, Conn., November 30, 1874.

" To whom it may concern: Know ye that I, Lloyd Humphrey, of said Norfolk, for the sum of two hundred and fifty dollars, received to my full satisfaction, do this day grant, bargain and sell to Julia O'Keefe, of said Norfolk, the following property, to wit: Ten tons of hay, now in the mow in my barn on the Hall meadow road; fifteen forty-gallon casks of cider, now in the cellar of my dwelling house in said Norfolk; five feather beds, also in my dwelling house in said Norfolk; nineteen sheep, now in my barn in Winchester; and three hundred pounds of tobacco, now in my old dwelling house in said Norfolk; all of said property to remain on my premises until the said Julia O'Keefe shall see fit to remove the same.

Lloyd Humphrey."

The court below finds, (although it does not appear in the bill of sale,) that the hay was to be indorsed on the note, at the sum of eighty dollars, but no such indorsement was ever made. The day after the sale, December 1st, the hay, while in the barn of Humphrey, and before the defendant had moved or fed out any part of it, was attached at the suit of Dickerman and Jopp, against Humphrey, as his property, the officer

leaving a notice of the attachment on the barn according to law. Judgment was duly obtained, and on the 8th of December execution issued, which was put into the hands of the plaintiff, a deputy sheriff, for service, and on the same day it was duly levied on the hay and notice posted on the barn as required by law.

On the 12th of December, notwithstanding the attachment and levy, the defendant commenced removing the hay, for which act this suit was brought. It is further found that between the 1st and 12th of December the defendant attempted to hire a barn to which she might remove the hay, but did not hire one till December 12th.

In the bill of sale the description is, "ten tons of hay now in the mow in my barn on the Hall meadow road." If this was the entire transaction, it would seem that the hay sold was never designated, set apart, or separated from the mow in the barn, as required by law to perfect the sale. But the facts bearing on this point are rendered doubtful by another part of the finding of the court, which states that the defendant "purchased the hay in two barns, estimated at ten tons," and that "the sale was valid, unless rendered constructively fraudulent as against the creditors of Humphrey by reason of its non-delivery." And the motion shows that this last point was the only matter in dispute between the parties in the court below. We will therefore confine our discussion to the question last suggested, namely—Was there a sufficient delivery of the hay to the defendant to enable her to hold it notwithstanding the attachment and levy thereon?

The doctrine that continued possession by the vendor after a sale renders the sale constructively fraudulent, is firmly established in this state as a rule of law and of public policy. The only doubt is whether the doctrine applies to this case. To enable the plaintiff to invoke the benefit of the rule, it must appear that there was the requisite time to deliver possession, and the claim here is, that the defendant did not delay for an unreasonable time to take possession, and therefore there was no retention of possession by the vendor after the sale.

The defendant seems to predicate the claim that there was not in this case a reasonable time to take possession, mainly, if not wholly, on the fact that she had no barn of her own and was not able to hire one till the 12th of December. It seems to us that the test of what is a reasonable time, implied by this claim, is not the true one. It makes reasonable time depend too much upon what happens to be convenient to the purchaser. If this were permitted, our rigorous rule of public policy as to the retention of possession would exist in vain. It might easily be evaded. If the want of a secure place to put hay can excuse its non-delivery, the same rule must apply to the sale of horses, cattle, or indeed any personal property requiring storage and care; and instead of the reasonable time being limited, as in this case, to twelve days, it might, on the same principle, be extended over months.

The law is not content to declare what shall be the effect of a retention of possession, but in order to make the doctrine effectual, and prevent evasion, many other equally rigorous rules have been prescribed; for instance, the law determines with the same unrelenting spirit what shall be regarded as a continued possession in the vendor, so that even an actual delivery and an actual change of possession is not enough, so long as the property is so placed as that it holds the same apparent relation to the vendor that it had before the sale. There must, in short, be such a manifest, continued and open change of possession, as to indicate to the world a change of title. Now if, in order to make the main rule effective, the law prescribes such rigorous rules after the sale, it must require a similar rigor relative to the time when the act of delivery is to be performed. And the rule on this subject should be, and is, that "a purchaser of personal property is bound in every instance to take immediate possession, if it is practicable." *Ingraham* v. *Wheeler*, 6 Conn., 277.

But what if it is not practicable? Then we say he is bound to take possession, or do that which is equivalent, in a reasonable time. But "reasonable time" must be construed, not with reference to the mere convenience of the party, but only with reference to the time fairly required to perform the act

of taking possession, or doing what is equivalent. We must construe the exception to the rule requiring immediate possession, in the spirit of the rule itself. The cases where it is held that immediate delivery is not practicable are usually illustrated in the books by the sale of a ship at sea, where immediate delivery is a physical impossibility, and the same principle has been applied to a case where the situation of the parties at the time of the sale was so remote from the place where the property was, that immediate manual delivery was physically impossible.

In *Mead* v. *Smith*, 16 Conn., 346, the bargain of sale was made in New York at 9½ o'clock A. M., and the property at the same time was in Greenwich, Connecticut. The purchaser started immediately after receiving his bill of sale, from New York to go to Greenwich, to take possession; but before he could arrive at the latter place it had been attached. And it was held that there was no want of diligence on the part of the purchaser, and that a reasonable time had not elapsed for the purpose of taking possession at the time it was attached.

This case extends the doctrine as far as it is reasonable to go. But it is to be noted that the purchaser started immediately in that case, while in the present case the defendant made no attempt whatever to take possession on the day of the sale, or on the next day, and neither of the parties performed any act whatever to indicate to the world that there had been a change of title, until two or three days after it had been attached, when the defendant fed some of the hay to her cattle. In this case also, the parties, when they made the trade, were in the vicinity of the property sold. It would have taken only a short time to have taken actual possession, or, if the hay was too bulky to be wholly removed the same day, there were several obvious ways of putting the property in the absolute power of the vendee, and having the vendor formally acknowledge, and manifest to the world the fact, that the property had passed under the sole dominion of the vendee. Story on Sales, §§ 311, 312.

But the parties not only did nothing towards a change of

possession, but at the time of the bargain it is highly probable they did not contemplate any actual change of possession, for, near the end of the bill of sale, the vendor uses this significant language:—"All of said property to remain on my premises until the said Julia O'Keefe shall see fit to remove the same." This phrase did not, as the counsel for the defendant contended, amount to a lease of the premises. The vendee could not occupy the premises to feed out the hay thereon. She was not given any possession of the barn—the premises were not given to her; only the property might remain just where it was, on the *vendor's premises.* It was then in the same apparent relation to the vendor in every respect after the sale as before.

We think the defendant did not use due diligence, and that it was practicable for her to have taken actual possession, or at least to have done some equivalent act, clearly indicating to the world a change of ownership, before the property was attached.

The motion for a new trial should be denied.

In this opinion the other judges concurred.