ROSE E. WHITE *vs.* JOHN F. O'BRIEN AND ANOTHER.

New Haven & Fairfield Cos., June T., 1891. ANDREWS, C. J., CARPENTER, SEYMOUR, TORRANCE and FENN, Js.

The plaintiff purchased, for a valuable consideration and in good faith, certain machinery used by the vendor in his business, and had it removed to her own premises, where she kept it four or five months. At the end of that time she had it taken to the house of the vendor, in close proximity to the place where it had formerly been used by him, for the purpose of having it painted and oiled, that she might be better able to sell it. Soon after it was removed there it was attached by a creditor of the vendor as his property. There were no suspicious circumstances attending the return of the property to the vendor. Held that the possession of the vendor in the circumstances was not, as a matter of law, a retention of possession and did not invalidate the sale. Such a re-possession, coupled with suspicious circumstances, would warrant a finding that the sale was colorable.

[Argued June 3d—decided June 19th, 1891.]

REPLEVIN of machinery, claimed to be the property of

the plaintiff, and attached by O'Brien, one of the defendants, as the property of a third person; brought to the District Court of Waterbury, and heard before *Bradstreet, J.* Facts found and judgment rendered for the defendants, and appeal by the plaintiff. The case is fully stated in the opinion.

*W. H. Pierce*, for the appellant.

*P. L. Wood*, for the appellees.

SEYMOUR, J. This is an action to replevy certain machinery which was attached as the property of Wilfred Straw. It was tried in the District Court of Waterbury and judgment was rendered for the defendants to recover one dollar damages with costs and for a return of the machinery to them. The finding of facts is as follows:—

Prior to April 20th, 1889, the machinery described in the writ of replevin was the property of one Wilfred Straw, of Waterbury, and used by him in Waterbury in a manufacturing business which he conducted. On said April 20th, the plaintiff in this action, a sister-in-law of said Wilfred Straw, bought the machinery of Straw, paying him full value therefor, and removed the same to certain premises in Middlebury, where she resided, and kept it there for four or five months. At the expiration of that time, not having room to conveniently store the machinery longer, she caused it to be removed to the house of Straw, in Waterbury, in close proximity to the premises where it had formerly been used by him, for the purpose of having him paint and oil the same, in order to enable her the better to make sale of it. While the machinery was thus in the possession of said Wilfred Straw, Isaac Straw, a creditor of said Wilfred, caused a writ of attachment to be issued against him, returnable to the District Court of Waterbury, and placed the same in the hands of the defendant, John F. O'Brien, a constable of Waterbury, for service. O'Brien took the writ to the house of Wilfred Straw, where he found the machinery, and served the writ of attachment by placing a notice of his attachment

thereon, and asked the said Wilfred if he would allow him to let the machinery remain where it was, to which he consented. O'Brien returned the writ to court in due time, with a return of his attachment thereon as aforesaid, in which action judgment by default was rendered in favor of said Isaac Straw against the said Wilfred Straw, March 28th, 1890, for the sum of $207.08, together with his costs of suit.

Afterwards the plaintiff, Rose E. White, while the machinery was in the possession of these defendants under the attachment, made demand on Isaac Straw for the machinery, · and upon his refusal to surrender it she instituted this action of replevin, and is now in possession of the machinery by virtue thereof.

The case was submitted to this court upon briefs. The plaintiff claimed that the attached machinery was her property and was not subject to attachment as the property of Wilfred Straw. Also that upon the facts stated no legal attachment therefor had been made, irrespective of the question of ownership. The defendants claimed that the attached machinery was in the possession of Wilfred Straw under such circumstances that it could be held by an attaching creditor as his property, and cited *Hatstat* v. *Blakeslee*, 41 Conn., 301; *Norton* v. *Doolittle*, 32 Conn., 411, and *Crouch* v. *Carrier*, 16 Conn., 510, as fully sustaining his claim.

In the case of *Hatstat* v. *Blakeslee*, the plaintiff, having a debt against one Whaples, took a wagon in payment, and removed it to his own premises and kept it there for five days, when he returned it to the possession of Whaples to be painted and repaired, who retained it in the same place and condition as before and at the time of the purchase, though without using it, for six months, and until it was attached by the defendant as the property of Whaples to secure a debt in his favor against Whaples and another. The defendant had no knowledge that the plaintiff had ever owned the wagon. Upon these facts the case was treated as one of retention of possession by the vendor and was de-

cided entirely upon the law applicable to such a state of facts. The five days possession by the purchaser, when taken in connection with the return to the vendor and his retention of the property until it was attached six months afterwards, in the same place and condition as at the time of the sale, was held to constitute in law a retention. The syllabus states the decision of the court as follows:—" The rule of law that the retention of possession of personal property by the vendor is conclusive evidence of a colorable sale, is a rule of policy required for the prevention of fraud, and is to be inflexibly maintained."

The yoke of cattle which was the subject of controversy in *Norton* v. *Doolittle*, was delivered to the purchaser at his house and kept by him a day or two, when they were placed back upon the same farm from which he bought them, and used in the same manner as before the sale, where they so remained for more than a year before they were attached as the property of the vendor. The syllabus is as follows:— " It is not enough that there is an actual delivery and an actual change of possession as between the vendor and vendee, so long as the property, without legal excuse, is so placed back into the same condition and the same apparent relation to the vendor, that there is no such manifest continued change of possession as would indicate to the world that there has been a change of title."

In *Crouch* v. *Carrier*, one purchased a yoke of oxen and " turned them round, but not otherwise took possession of them." The vendor retained the possession some eleven months pursuant to an understanding with the vendee and used them in accomplishing a few specified purposes. It was held that there was no sufficient explanation of the continued possession and apparent ownership of the property after the sale, and that consequently the sale was fraudulent and void.

There are many cases of like purport in our reports. Our law is admirably stated in *Capron* v. *Porter*, 43 Conn., 388. Judge LOOMIS in giving the opinion says:—" That the retention of the possession of personal property by the vendor

after a sale raises a presumption of fraud which cannot be repelled by any evidence that the transaction was *bonâ fide* and for valuable consideration, is still adhered to and enforced by the courts in this state with undiminished rigor, as a most important rule of public policy. The reason of the rule is, that as against a person who was once the owner of the property and all who claim by purchase from him, the continued possession is to be regarded as a sure indication of continued ownership, and that the possessor would obtain by such continued possession a false credit to the injury of third persons if there were no such rule to protect them."

We fully accord with the principles contained in the cases cited by the defendants, and recognize the necessity of sustaining them. But are they applicable to the case at bar?

We cannot hold, as matter of law, upon the facts before us, that there was a retention by the vendor of the property in question after the sale. Nor that the property, without legal excuse, was so placed back into the same condition and the same apparent relation to the vendor, that there was no such manifest and continued change of possession as would indicate to the world that there had been a change of title.

There was no actual retention of the property. It was duly delivered to the purchaser. Did its return after four or five months under the circumstances detailed constitute a constructive retention? Not necessarily; not as a matter of law.

For all that appears the property was attached immediately after it was removed to Straw's house. It was not placed in the same condition and apparent relation to the vendor as it was before and at the time of the sale, but was placed in Straw's house, in close proximity to the premises where it had formerly been used, not for the purpose of being used, but to be painted and oiled so that it might be in condition to sell. There must be some limit to the presumption that a removal of property for legitimate purposes into the hands of the vendor is a retention of its possession

by the vendor. Such a removal four or five months after the sale, coupled with suspicious circumstances, would warrant a finding that the sale was colorable; but that fact alone, coupled with no suspicious circumstances, would not invalidate the sale as matter of law, as constituting a retention of possession; and that is the only fact upon which the defendant can rely in this case to invalidate the sale.

We decide therefore that, upon the facts stated, the sale in question was not, as a matter of law, invalid, and that the court below erred in so holding.

A new trial is granted.

In this opinion the other judges concurred.