## ALLIS FREEDMAN *vs.* ERNEST W. AVERY.

First Judicial District, Hartford, May Term, 1915.
THAYER, RORABACK, WHEELER, BEACH and BURPEE, JS.

A deed, absolute in form, but recorded without a secret and separate defeasance which rendered it merely a mortgage, is invalid as against an attaching creditor of the grantor.

The rule that requires a change in the possession of personal property sold, has long been the established and unquestioned law of this State. Moreover, such change must be manifest, continued and open, so as to indicate to the world a change of title; otherwise the property will remain subject to attachment for the debts of the

Freedman *v.* Avery.

vendor, notwithstanding the good faith of the parties and the presence of an adequate consideration.

The plaintiff, a purchaser of lumber piled upon the land of a third person, went to the lot on the day of the sale, counted the lumber and attached to some of it his business cards and a paper declaring his ownership. *Held* that even if these acts were to be regarded as a sufficient change of possession for the time being, it was obvious that such quickly perishable signs would not long remain in a condition—as in fact they did not—to convey information to any one; and therefore they were insufficient to indicate a continued and open change of possession.

The plaintiff also sought, personally and through his attorney and his broker, to sell the lumber, and claimed to have made efforts to remove attachments of it made by others. *Held* that such acts might serve to notify the individuals addressed of the plaintiff's claimed ownership, but they were not intended to and could not make a change of possession which was apparent to the public nor indicate to the world a change of title.

The plaintiff contended that he was not obliged to remove the lumber, because it was bulky and not very valuable, while the means of transportation were meagre and very expensive. *Held* that while this might be true, it did not excuse him from taking other steps which were practicable and convenient to make evident to the world a change of title; and that these acts of omission rather than his failure to remove the lumber, justified the trial court in its conclusion that the change of possession was not so apparent as to enable the plaintiff to hold the property against the defendant, who was an attaching creditor of the vendor.

Evidence of what the plaintiff was advised to do by his attorney in taking possession of the property, was excluded as immaterial. *Held* that such ruling was correct: that the material question was what the purchaser did, not what he was told to do.

Acts of ownership are not material unless they are so manifest and open as to indicate, or at least tend to indicate, to the world a change of possession. Accordingly, it was *held* in the present case that letters offering to sell the lumber, written by the plaintiff's attorney, were of little importance as evidence, as was also evidence of what was said and done by the plaintiff and another in removing or in attempting to remove an attachment placed upon the lumber some six months or more before the plaintiff claimed to be in possession, or to have acquired any title to the property.

Argued May 4th—decided July 16th, 1915.

REPLEVIN for lumber, brought to and tried by the Superior Court in Tolland County, *Tuttle, J.;* facts

found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

On August 6th, 1911, William H. King, a resident of Springfield, Massachusetts, was the owner of a lot of land containing about one hundred acres, lying in a part of the town of Stafford in this State which is little frequented and considerably remote from any center of population. On that day King, by warranty deed, conveyed the land to one Galbraith, who lived on premises next adjoining. The deed contained the following words: "The timber on the place does not belong to said Galbraith, being sold to other parties, to be removed in two years. All wood and timber." The deed was recorded in the land records of the town of Stafford September 7th, 1911. At this time King owned about seventy-five thousand feet of sawed lumber piled in large piles on this lot of land and worth about $750.

On December 10th, 1912, the plaintiff loaned to King $2,000, for which King gave to the plaintiff his note payable three months after date; and, as security for the loan, he executed and delivered to the plaintiff a warranty deed absolute in form, which purported to convey the fee, free of incumbrances, of the same lot of land he had conveyed to Galbraith, together with all the lumber thereon, but reserved to King the right to remove the ties already cut and to be cut from said premises, but no other lumber whatsoever. Said deed was duly recorded in the land records of the town of Stafford, but the secret and separate defeasance was never placed on record. The plaintiff never examined the land records concerning the title to said land, and he himself never had any title thereto.

When the note for $2,000 became due, King paid the plaintiff a part and gave him a new note for the balance. When this note came due King failed to make any pay-

ment thereon, and the plaintiff held it unpaid until July 25th, 1913. Before its maturity he had learned of the deed from King to Galbraith, and also that King was indebted to many people, was insolvent, and would not be able to pay his note to the plaintiff. Influenced by these facts, on July 25th, 1913, the plaintiff surrendered this note and received therefor from King a bill of sale of all the lumber which was still piled on the land conveyed to Galbraith. This bill of sale the plaintiff did not record.

On July 26th, 1913, the plaintiff went to said lot of land with his son, counted the lumber lying there, affixed one of his business cards to each pile thereof, and on that pile nearest the entrance to the lot tacked a paper upon which it was written that the lumber belonged to Allis Freedman. Between that day and September 17th, 1913, the plaintiff came four times to show said lumber to five possible purchasers, and each time in an automobile which was left standing in front of the lot while the lumber was being examined. The plaintiff also authorized a lumber broker in Springfield to sell this lumber, and he once visited the lot where the lumber was piled. The broker and the plaintiff's attorney wrote letters to several persons offering to sell the lumber. The plaintiff never made any attempt to inform Galbraith that he claimed to be the owner of the lumber, or to make any arrangement with him to allow it to remain upon his land; and although it remained in the same position until July 16th, 1914, the plaintiff did not put it into his list of taxable property either in Massachusetts or in Connecticut, nor pay any taxes on it. The tax assessors of the town of Stafford placed it in the tax list of Galbraith, and he paid the taxes on it because he was unable to find who the owner was. Between July 25th and September 17th, 1913, this lumber was twice attached as the property of

King, and certificates of such attachments were placed upon it, but these attachments had been vacated, for some reason not disclosed by the evidence, before September 17th, 1913, when the defendant, as deputy sheriff of Tolland County, attached all the lumber as the property of King, in a suit against him by Mary A. Baker of Somers. At that time there was nothing on the land, or on the lumber piled upon it, to indicate to any person that the lumber belonged to any other person than King. None of the cards or notices which had been posted by the plaintiff were visible. Neither the defendant nor said Mary A. Baker at this time had any knowledge or means of knowledge of the bill of sale of the lumber to the plaintiff, nor of any claim of the plaintiff respecting the same. When filing his attachment, the defendant discovered on the town land records the deeds from King to Galbraith and to the plaintiff, and also learned of the previous attachments, and that they had been released for some reason unknown to him. In the action in which the defendant made said attachment, judgment was obtained and execution duly issued thereon June 24th, 1914. The defendant made due and unsuccessful demand on King upon said execution, and thereafter proceeded to levy the same upon the lumber, but before the completion of such levy the lumber was replevied by the plaintiff in this suit.

During the trial Gurdon W. Gordon, the Springfield lawyer who drew the bill of sale of the lumber by King to the plaintiff, testified in detail concerning that transaction; and that he had instructed the plaintiff to go to the place where the lumber was located and take possession of it. Thereupon he was asked whether he advised the plaintiff "how to take possession." Upon objection, the question was excluded. The same witness testified that he had written a letter to a certain

person to get him to buy said lumber. Upon objection, the plaintiff's counsel stated that he offered this and other similar evidence to show that the plaintiff had taken possession of the lumber. The court excluded the evidence. Subsequently the same witness testified, without objection, that he had written several letters for the plaintiff in efforts to make a sale of the lumber.

Frederick Cohen, a witness for the plaintiff, testified that he drew the deed from King to the plaintiff on December 10th, 1912, and was then asked whether at that time "any particular mention was made of this lumber." Upon objection, the question was excluded. Subsequently the same witness testified that "about February, 1913," the plaintiff told him that this lumber had been attached, and requested him to write a letter to the deputy sheriff who had made the attachment, asking him to remove it, and that he did so. Plaintiff's counsel claimed the statement to show an act of possession. Upon objection, the question was excluded.

*Lawrence A. Howard,* for the appellant (plaintiff).

*Warren B. Johnson,* with whom was *J. Warren Johnson,* for the appellee (defendant).

BURPEE, J. In his complaint the plaintiff alleges that on or about July 25th, 1913, William H. King sold and delivered to him the lumber which is the subject of this litigation, and that he took possession thereof. He made no claim of title, in pleading or argument, based on the deed of King to him executed December 10th, 1912, nor could he successfully, because its separate defeasance made it a mortgage, which, being recorded without the defeasance, was not valid against an attaching creditor of the grantor. *Ives* v. *Stone,* 51 Conn. 446.

The alleged sale and delivery apparently were not seriously disputed by the defendant, and the court has found that they were made. No question was raised about consideration or good faith. The contention between the parties concerns only the allegation and claim that the plaintiff took possession of the lumber before the attachment; that is, possession sufficient to repel the presumption of fraud.

In this State the rule of law that requires such a change of possession of personal property sold has been so long established, so often recognized, and so firmly enforced, that no one questions it now. It is settled beyond dispute that this rule should be rigidly applied "to every case where there has not been an actual, visible, and continued change of possession." *Norton* v. *Doolittle*, 32 Conn. 405, 410. The change must so appear "to the view of the world." There must be something more than good faith and adequate consideration between the parties. If the property is permitted, without legal excuse, "to remain in fact or apparently and visibly the same" as before the sale, it will be subject to attachment for the debts of the vendor as still his property. And the actual change, once made, must be "visibly continued." *Ibid.* 411. Even an actual delivery and an actual change of possession is not enough, so long as the property remains in the same apparent relation to the vendor that it had before the sale. "There must, in short, be such a manifest, continued and open change of possession, as to indicate to the world a change of title." *Seymour* v. *O'Keefe*, 44 Conn. 128, 131.

The acts of the plaintiff do not satisfy these requirements. On the day of the sale he went with his son to the lot where the lumber was piled and counted it, and attached to some of it his business cards and a paper declaring his ownership. If those acts by themselves

be held to have effected a sufficient change of posses-
sion for the time being, they were not sufficient to make
the change "visibly continued." It was certain on that
day, as it afterward appeared in fact, that the cards
and the paper would not long remain in such condition
as to convey information to any one. Such quickly
perishable signs were not adapted to, and did not in
fact, indicate "a manifest, continued and open change
of possession."

The plaintiff's attempts, individually and through
his attorney and his broker, to sell the lumber, were
private transactions with the several persons addressed,
which might serve as notice to them of the plaintiff's
claim of ownership, but were not intended to and
could not make a change of possession apparent to the
public, or "indicate to the world a change of title."
This was what the plaintiff was required to do, and not
merely to show to a few persons a change of ownership.
His declaration concerning that part of the sale might
help to prove, but could not alone establish, the facts
necessary to make the change of possession manifest
and open. They were not made to the public generally,
or to the defendant. Before the time of the attach-
ment the plaintiff permitted the property apparently
and visibly to hold the same relation to the vendor that
it had before the sale. "To all the world things re-
mained unchanged. . . . The apparently unchanged
ownership . . . was a constant denial" of the plain-
tiff's statements, "and as a matter of law bore them
down." *Hull* v. *Sigsworth*, 48 Conn. 258, 266.

Of the same nature, and for the same reasons in-
sufficient, were his acts, if it is to be assumed that he
did anything, to remove the attachments that were put
upon the lumber as the property of King between the
date of the sale and the time of the defendant's attach-
ment. We do not intend to say that these acts of the

plaintiff, separately or collectively, were not suitable to indicate a change of possession. We say only that collectively they were not sufficient to conform the plaintiff's conduct to the rule of law that is imperatively controlling upon a person in the circumstances and conditions found to exist in this case.

The things the plaintiff left undone are things a person in such circumstances and conditions might reasonably be required to do; and, if they had been done, they might, in connection with what was done, have well been held to have met the requirements of our law. It appears that he made no attempt to learn who was the owner of the land on which the lumber lay, or to inform him of the sale of it to himself, or to obtain for himself a lease or license to continue to leave the lumber where it was. He placed no durable and conspicuous sign of his ownership upon it. He did not remain in actual and open possession of it. He never advertised his purchase. In these respects, at least, he failed to act upon the standard of conduct which this court approved in *Dann* v. *Luke*, 74 Conn. 146, 50 Atl. 46.

The failure of the plaintiff to put this property in any tax list is important only because it shows that he did not do one act of ownership that he should have done after he bought the lumber on July 25th, 1913, and before he asserted his ownership in this action on July 16th, 1914, an interval of nearly a year. But since, as we have said, it was not his ownership only that he must prove, but the all-important change of possession, open and continued, his failure in this particular becomes evidence of much the same kind as his failure to record his bill of sale. In both instances he neglected to put on a public record notice of the change of title.

The court finds that the defendant, when he was completing his attachment, discovered the deed from King to the plaintiff on the town records. In his brief

the plaintiff's counsel suggests, but does not seriously claim, that the defendant thereby received such notice of the sale as would take the place of a sufficient change of possession. But aside from the fact that this deed, because of its unrecorded defeasance, was void "as it respects bona fide creditors" (*Ives* v. *Stone*, 51 Conn. 446, 455), and allowing the defendant's knowledge of the deed to have whatever weight it should have in connection with the other evidence, the law of this State does not support the counsel's suggestion. The reasons are those given in *Hull* v. *Sigsworth*, 48 Conn. 258, 266, and quoted above.

The plaintiff claims that the court below erred in holding that the failure of the plaintiff to take sufficient possession of the property to repel the presumption of fraud was not sufficiently explained. He argues earnestly that he was not required to complete his possession by removal of the lumber from the land where it had been lying as the property of King for a long time before the sale, because it was "bulky," "not very valuable," "and in a forsaken country where means of transportation were poor," and the process would be very expensive. We are inclined to agree that the facts found in this case, in which no element of fraud is included, would explain and excuse the plaintiff's failure to remove the lumber, and nullify any influence or inference such a failure might have in different circumstances and conditions. But, if he decided to take the risks of not removing the lumber and to depend upon these facts as his explanation and excuse, the plaintiff was called on the more reasonably and imperatively to do whatever else he could do to make the change of possession "manifest, continued and open," and "to indicate to the world a change of title." *Seymour* v. *O'Keefe*, 44 Conn. 128, 131. We have already stated some of the things which it was practicable and con-

venient for him to do, but which he did not do. His failure to do these things, rather than his failure to remove the lumber, justifies the conclusion of the court that the change of possession was not made sufficiently evident to enable the plaintiff to hold the property against the defendant's attachment. His failure in these respects he did not attempt to explain. Hence the further conclusion, that his failure to take sufficient possession was not sufficiently explained, was inevitable, and his failure to remove the lumber and his excuses for it become unimportant.

The plaintiff assigns as error the exclusion of certain testimony. What advice Mr. Gordon, the plaintiff's Springfield lawyer, gave to him "as to how to take possession" of the property was immaterial. If the instructions given were not correct and sufficient in the circumstances and according to the law of this State, the plaintiff could not for that reason be excused for any defect or failure in his own conduct; if the instructions were ample and unexceptionable in all respects, and the plaintiff neglected to follow them, he could get no help from them in evidence. What he did, not what he was told to do, was the material matter in question.

If the fact that the plaintiff's lawyer wrote several letters to individuals trying to sell the lumber to one of them, was material, because it tended to show acts of ownership, the plaintiff had whatever assistance it could give as evidence, since it was admitted subsequently without objection; and therefore he has no cause of complaint now. But acts of ownership were not material, unless they were so manifest and open as to indicate, or tend to indicate, to the world a change of possession. In the circumstances of this case, the offers to sell the lumber privately made to several persons, while it remained in the same apparent relation

to King as before the sale to the plaintiff, were of little importance as evidence.

Equally unimportant and manifestly irrelevant was any mention made of the lumber when Frederick Cohen was drawing the deed of December 10th, 1912. The statements and relations of the grantor to the grantee at that time could have no influence or bearing upon the questions involved.

The plaintiff offered, for the purpose of showing "an act of possession over the property," Mr. Cohen's testimony covering what the plaintiff or the witness said and did to remove an attachment placed on the property in February, 1913. That was six months before the sale of the property to the plaintiff and before he did or could claim to be in possession, or even in ownership. The testimony was properly excluded for that reason, as well as for the reasons above indicated concerning the removal of subsequent attachments, while permitting the property to be apparently restored and continued as it was before the sale. Considering this and the other controlling facts in the case, the evidence offered concerning the removal of the attachments and the offers to sell the lumber was not important enough to call for objection, or, if admitted, to influence the result.

There is no error.

In this opinion the other judges concurred.