PHILANDER PERRIN v. WILLIAM F. REED AND CHESTER L. REED.

*Levy of Execution.    Record.    Deed.    Notice.    Attachment.*

*Quere,* whether the statute of 1854,* relative to the appraisal of real estate situated in two or more adjoining towns in the case of a levy of execution thereon, applies to the case of a levy of an execution upon two pieces of land not adjoining each other, but situated in adjoining towns. PIERPOINT, J.

But if, in such case, the appraisers are appointed partly from both towns, the defect, if any, in the mode of appointing them, is so merely informal as to be cured by the neglect of both parties to apply within two years to the supreme court to vacate the levy, under the 49th sec. of chap. 45 of the Compiled Statutes, (Sec. 26, chap. 47, General Statutes.)

The fact that an execution is levied upon real estate without noticing a mortgage which exists upon it, is a matter of which the debtor cannot complain.

The record of a deed in one town conveying land in such town is not of itself constructive notice of the conveyance by the same deed of land lying in another town.

But if one sees such record, and reads it and has such knowledge of the premises as to know from the description that the land in the other town was conveyed by the deed so recorded, this constitutes notice of the conveyance of the land in such other town.

An attaching creditor of real estate with notice, either actual or constructive, of the true state of the debtor's title, is bound by such notice, and stands in no better position than a purchaser with the same notice.

But notice of the sale of personal property without change of possession will not affect the claim of an attaching creditor of the vendor thereto.

EJECTMENT for a tract of land in Williamstown. Plea the general issue, and trial by jury at the January term, 1861, in Orange County.

The plaintiff introduced the copy of a deed from Andros Reed to Andros A. Reed, dated December 10th, 1842, describing the land sued for, and also other land in Brookfield, and being what is called the Reed farm.

---

*Which is as follows: " Whenever an execution is extended on any real estate situated in two or more adjoining towns, the same shall be appraised by three judicious and disinterested appraisers of the vicinity, residing in either of the towns in which part of such real estate is situate, who shall be appointed in the same manner as is now provided for in other cases. See sec. 22, chap. 47. General Statutes.

Perrin v. Reed.

The plaintiff then introduced a writ in his favor against Andros A. Reed, dated April 19th, 1852, and served in Brookfield on the same day, and in Williamstown by attaching all the land in Williamstown, on the 20th of April, 1852 ; also the record of a judgment on said writ, and levy of execution thereon, against Andros A. Reed, rendered in July, 1854, on which execution was issued, which execution was levied upon the land in question December 6th, 1854.

To the admission of this levy the defendants objected on the ground that the appraisers did not reside, and were not freeholders in the town where the land lay, and because there were two separate and distinct pieces of land set off in the same levy, not connected, but being from two to three miles apart, and lying in different towns, and both appraised by the same men, and it was admitted by the plaintiff that two of the appraisers resided in Brookfield, and the other in Williamstown.

The court overruled the objection *pro forma*, and admitted the record of the levy, and for the purposes of the trial treated it as valid ; to which the defendants excepted.

The defendants introduced a deed from Andros A. Reed to Andros Reed, dated March 12th, 1849, of the Reed farm, containing land in Brookfield and Williamstown, including the land sued for in this action, which deed was recorded in Brookfield, March 12th, 1849, and in Williamstown, April 26th, 1852 ; also a deed from Andros and Polly Reed, to Andros A. and William F. Reed, dated March 13th, 1851, and recorded in Brookfield the same day, and recorded in Williamstown, April 26th, 1852, of the same land ; also a mortgage deed from Andros A. Reed and William F. Reed to Andros Reed, dated March 13th, 1851, and recorded in Brookfield, March 14th, 1851, and in Williamstown, April 26th, 1852, of the same land, which deed was to secure the maintenance of the said Andros Reed and his wife and daughters, and to pay his debts ; accompanied with proof that the said Andros and one daughter was still living, and supported by the defendant, William F. Reed, and that a portion of the debts were still unpaid.

The defendants then introduced testimony tending to prove that the plaintiff, at the time he made the attachment of said

land in Williamstown, had full knowledge that the same had been conveyed by Andros A. Reed to Andros Reed, together with the other conveyances of the same land as contained in the deeds above referred to, and introduced by the defendants. This evidence was objected to by the plaintiff, but admitted by the court; and the plaintiff introduced testimony tending to prove that he had no such notice.

The evidence tending to show such notice, consisted of evidence tending to show that on the evening of the plaintiff's attachment in the town of Brookfield, being the evening before the attachment in Williamstown, and before either attachment was made, the plaintiff went to the town clerk's office in Brookfield, to see if any previous attachment or conveyance of real estate of Andros A. Reed had been made, and that he there read the record of said deed from Andros A. Reed to Andros Reed, and of the other subsequent deeds, and read the description of the lands therein.

The plaintiff objected to the introduction of this evidence on the following grounds:

1. That notice of a prior unrecorded deed of the judgment debtor, would not affect the rights of an attaching creditor.

2. That as this deed was not recorded in Williamstown, it was to be regarded, as to the premises in question, as an unrecorded deed, and that the reading of the record of it in a different town from that where the land was situated, was no notice that any such original deed existed as the record indicated. The court admitted the evidence as competent to go to the jury, to which the plaintiff excepted.

This was the only evidence of notice to the plaintiff, before the attachment, of the deed from Andros A. Reed to Andros Reed, dated March 12th, 1849, or that Andros A. Reed had conveyed away the premises, except evidence tending to show that the plaintiff had such previous information as to the Reed farm, that on reading the description of the land purporting to have been conveyed by the deed, he might have known that it purported to convey the premises in question.

The plaintiff also introduced the record of a quit claim deed of the same land from W. F. Reed to David W. Reed,

dated November 8th, 1852, and recorded the same day in both towns.

The defendants then introduced a deed of the same land from the said David W. Reed and his wife to the defendant, Chester L. Reed and to Emily B. Reed, the wife of the defendant, William Reed, dated January 25th, 1855, and recorded the same day.

The defendants claimed, and requested the court to instruct the jury, that if, from the proof, they should find that the plaintiff was informed and had knowledge of the existence of said deed from Andros A. Reed to Andros Reed, dated March 12th, 1849, and the other deeds and conveyances of said land, before he made his said attachment, the defendants were entitled to a verdict; that although by the deed from Andros and Polly Reed to Andros A. Reed and William F. Reed, dated March 13th, 1851, Andros A. Reed would appear to own one undivided half of the land, still, as there was an outstanding mortgage on said land back to said Andros, the plaintiff could not levy upon the equity of redemption of the said Andros A. Reed, in the manner of this levy, nor would the levy entitle him to hold one half of the land.

But the court refused to charge as requested, but did charge, among other things not objected to, that if the jury should find that the plaintiff had notice before his attachment that the premises in question had been conveyed to Andros Reed, still the plaintiff's attachment and levy would hold one undivided half of the premises which Andros A. Reed acquired by the deed to him and William F. Reed, dated March 13th, 1851, although that deed was not recorded in Williamstown till after the attachment; and that neither the fact that the levy was upon the entire estate in the premises, instead of an undivided half, nor the fact that the levy was made without noticing the mortgage to Andros Reed, could be set up by the judgment debtor, or these defendants, to avoid the levy, or to prevent its operation to vest in the plaintiff the undivided half owned by Andros A. Reed, the execution debtor; and that, although, as between the plaintiff and Andros Reed, the mortgagee, the plaintiff might take it subjected to the mortgage, yet the defendants could not set up that mortgage to defeat a recovery in this action.

The jury returned a verdict for the plaintiff for one undivided half of the premises.

To the refusal of the court to charge as requested, and to the charge as given, the defendants excepted.

*Hebard & Martin* for the defendants.

*C. W. Clarke* and *Peck & Colby*, for the plaintiff.

PIERPOINT, J. It is insisted by the defendants in this case that the levy of the execution on which the plaintiff bases his right to recover is void by reason of irregularities in the proceedings of the officer in making it.

It appears from the case that the land in controversy is one of two pieces of land that were set off at the same time, lying separate from each other, one piece situate in Brookfield and the other in Williamstown, two adjoining towns. The land in controversy is in Williamstown. It is conceded that two of the appraisers were appointed from Brookfield and one from Williamstown. This, it is insisted, invalidates the levy. By the 23rd section of the statute relating to the levy of executions, it is provided, that when an execution is extended on any real estate, the same shall be appraised by three judicious and disinterested freeholders of the vicinity, residing in the town in which such estate lies. If the question rested solely upon the construction and effect of this section, the position taken by the defendants' counsel would be entirely sound,—there would have been such a departure from the requirements of the statute as would render the levy void. But by the act of 1854 it is provided, that " when execution is extended on any real estate situate in two or more adjoining towns, the same shall be appraised by three judicious and disinterested freeholders of the vicinity, resident in either of the towns." This statute would seem to be sufficiently broad in its terms to cover a case like the present, but it is argued that this statute was intended to apply only to cases where an execution is extended upon a piece of land across which the town line runs, the land all lying together in one piece, and not to detached parcels lying in the different towns. That

such may fairly be said to have been the intention of the legislature, is undoubtedly true, but on the other hand, the language used is broad enough to embrace both cases. But we think it is not necessary now to determine the question as to the construction of the act of 1854, inasmuch as the case comes clearly within the provisions of the 49th, 50th, 51st and 52nd sections of the 45th chapter of the Compiled Statutes relating to the levy of executions, wherein it is provided that when a levy is "irregular, informal, or not made according to the strict rules of law," either party may apply to the supreme court, either to annul and set aside such levy, or affirm it, within two years from the time such levy is returned, and that if neither party avails himself of such privilege, within such time, then the levy shall be deemed to be good and valid to convey all the right, title or interest the judgment debtor had therein at the time of the levy; and shall be conclusive evidence of title in such estate, against such debtor or his representatives. I apprehend it would be very difficult to fix upon any definite rule by which to determine the precise extent to which this statute would operate to cure defects in the levy of executions. That must necessarily depend upon the peculiar characteristics of each individual case.

In this case all the forms prescribed by statute have been complied with; no question is made as to the character or ability of the men appointed to make the appraisal, or as to the manner in which they discharged the duty, or as to the perfect good faith of all parties engaged in making the levy, neither is it claimed that any injustice has been done. The magistrate, in appointing the appraisers, evidently intended to comply with the act of 1854; if he erred in the construction of it, it is not remarkable, for we are not entirely agreed as to it, after full argument. The whole case, taken together, is one where the effect of the levy may well be considered as doubtful, and the parties having acquiesced therein for the period of two years, it is now too late for the defendants to take advantage of any such defect.

The fact that the plaintiff set off the whole premises without noticing the mortgage, is a matter of which the debtor cannot complain. He is in no respect injured thereby. His whole interest in the estate is taken, and if the creditor was willing to

take it on the debt, at its full value, without deducting the mortgage, that cannot prejudice the debtor, and is not an irregularity of which he can take advantage. The ruling of the court in this respect we think was correct.

The plaintiff excepted to the rulings of the court as to · the admission of the evidence offered to show notice to the plaintiff of the existence of the deed of the premises in question from Andros A. Reed to Andros Reed, and also as to its effect, if found to be true. The recording of a deed in one town conveying land in such town, is of itself no notice of the conveyance by the same deed of lands lying in another town, in which such deed is not recorded. This principle was recently recognized in a case decided in Rutland County, in which one Lapham and the Danby Bank were parties, not yet reported ; indeed, no such effect is claimed for it in this case. But the evidence offered was · not only that the deed was so recorded, but that the plaintiff had actual knowledge of the fact, had examined it, read the description of the premises conveyed, and had such knowledge of the premises in question as to know from the description that the deed conveyed the premises. This we think was clearly evidence tending to show such knowledge, and such evidence as he would be bound to regard. It is not a mere copy of a deed which he examines, but a record, in its appropriate place, made by a public officer, and in accordance with the requirements of law. Such an examination would be just as satisfactory to ·the party, and as effectual in law, as an examination of the original deed. There is a bare possibility of a mistake, but a party, with such knowledge, cannot avoid its effect on the ground of such a possibility.

As to the effect of such notice, the rule ·seems to be now well settled in this state that an attaching creditor of real estate with notice, either actual or constructive, of the true state of the debtor's title, stands in no better position than a purchaser with the same notice. This doctrine is fully recognized in the case of Hackett v. Callender et al., 32 Vt. 97.

The rule is different as to personal property which the vendee suffers to remain in the possession of the vendor. Such a sale the law regards as fraudulent, and void as to creditors, for the

want of a change of possession. A creditor with full knowledge of such a transaction, only has notice of a sale, that in law is void as to him.

We find no error in the rulings or charge of the court below. Judgment is affirmed without cost to either party in this court.