## BASSINGER V. SPANGLER.

1. Under the statute of frauds of this state (Gen. St. § 1523), the sale of chattels must be followed by actual and continued change of possession.
2. The statute admits of no excuse for leaving personal chattels, capable of manual delivery and removal, in the apparent possession of the vendor; nor does it admit of a construction whereby there may be a joint or concurrent possession in both vendor and vendee; nor can a case be taken out of the statute, nor can the statute be satisfied, by proving that the sale was *bona fide.*
3. Unless the purchaser can show such a substantial compliance with the terms of the statute as affords visible notice to the community

of a change in the ownership of the goods, the transaction constitutes a fraud in law, and, as such, must be held to be void as to creditors and subsequent purchasers in good faith of the vendor.

4. The recording of a bill of sale, the law not requiring or authorizing the recording of such instruments, is no notice to creditors of the vendor.

5. Where the uncontradicted evidence of the plaintiff fails to show such a compliance with the statute as would sustain a verdict in his favor, it is proper for the court to direct a verdict for the defendant.

*Error to District Court of Arapahoe County.*

JAMES F. WELBORN, prior to December 1, 1881, was the proprietor of the premises No. 323 California street, in the city of Denver, and with his wife occupied the same as his residence. He became indebted to the late E. P. Jacobson, and likewise to various other persons, and previous to December 1, 1881, conveyed these premises to Jacobson, but continued to reside thereon until April 1, 1882. Jacobson became surety for Welborn, March 16, 1880, upon the latter's note of that date, for the sum of $4,000, payable to J. S. Brown & Bro., of Denver; and, after Jacobson's death, this note, being unpaid, was allowed as a claim against his estate, and ordered by the county court to be paid in due course of administration. The administrators, W. S. Decker and Annie W. Jacobson, paid this claim, amounting to the sum of $4,430.60.

The present litigation, to a large extent, grew out of an attempt of said administrators to collect from Welborn the last-named claim, and the connection of plaintiff in error, Bassinger, therewith arose as follows: Bassinger, being the father of Mrs. Welborn, both he and wife became guests of the Welborn family about November 1, 1881, and thereafter continued to reside with the Welborns upon the premises aforesaid until April 1, 1882. During this time another debt of Welborn's, which he had secured by a chattel mortgage upon his household goods and furniture, matured, and the goods were adver-

tised to be sold on December 8, 1881, upon said mort-
gage.   The day of the sale arrived, and quite a number
of persons came to the house to attend the sale, but
owing to the purchase of the property by Dr. Bassinger
from Welborn prior to the hour advertised for such sale,
and the payment of the chattel mortgage by Bassinger,
the sale did not take place.   The amount paid by the lat-
ter for the goods appears to have been the sum of $6,000.
The goods purchased consisted of carpets, furniture and
other household effects.   A bill of sale was executed by
Welborn to Bassinger, and it was announced to the per-
sons present that the property would not be exposed to
sale upon the mortgage, for the reasons that it had been
purchased by Dr. Bassinger and that the indebtedness
had been paid by him.   A formal or constructive deliv-
ery was made of the goods by Welborn to Bassinger, in
the presence of several persons, and Bassinger after-
wards, on the same day, caused the bill of sale to be re-
corded in the office of the clerk and recorder of Arapahoe
county.   After Bassinger's purchase he and his wife con-
tinued to reside with the Welborn family as before, there
being no visible change of the family relations nor of the
possession of the property purchased.   Welborn's door-
plate still remained on the door, but Bassinger did not
indicate, by any outward sign, that the said house was
his place of abode.   He, however, testified upon the trial
below, in which he was supported by the testimony of
Welborn, that he had the absolute possession and control
of the goods purchased by him, from and after the time
of the transfer thereof to him as aforesaid.   Subsequent
to the purchase of the goods by Bassinger, Decker spoke
to him about payment of rent for the premises, but he
declined to pay rent, referring Decker to Welborn.
Decker also advised with him at different times about
the sale of the household furniture, stating, in substance,
that he was desirous of disposing of the premises upon
which Welborn and Bassinger were residing, and that it

would be for the interests of both parties to sell the premises and the furniture and goods to the same purchaser, he having one in view, and asking Bassinger to put a price upon the goods. It appears that afterwards Bassinger was negotiating with one Sands with respect to the sale of the goods, and that Sands was at the same time negotiating with Decker for the purchase of the real estate; but before these negotiations were consummated the administrators of the Jacobson estate attached the goods and household furniture as the property of Welborn, in satisfaction of the judgment entered in the county court against the Jacobson estate. Bassinger replevied the goods as belonging to him, and upon the trial of the replevin suit, at the conclusion of the testimony, the court instructed the jury to return a verdict for the defendant, which was done and judgment entered thereon; to reverse which judgment this writ of error is prosecuted.

Mr. CHAS. H. TOLL, for plaintiff in error.

Messrs. DECKER and YONLEY, for defendant in error.

BECK, C. J. The question presented by this record for our decision is whether the transaction between James F. Welborn and Dr. Bassinger comes within the fourteenth section of the statute of frauds, and constitutes thereby a *fraud in law.* This section reads as follows:

"Every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the things sold or assigned, shall be presumed to be fraudulent and void as against the creditors of the person making such assignment or subsequent purchasers in good faith, and this presumption shall be conclusive." Gen. St. § 1523.

In this case, as in many of like character, the good

faith of the purchaser is not questioned, but the attaching creditors, who are represented by the defendant in error, rely upon the requirements of the statute that the sale must. be followed by an *actual* and *continued change of possession*, and the failure of the purchaser to comply therewith.

The principal error assigned is the withdrawal from the jury of the questions of fact whether or not the evidence showed a sufficient delivery of the property sold, and whether the same was followed by an actual and continued change of possession. Had there been conflicting testimony on these points, and if the testimony on the part of the plaintiff had been sufficient in law to have sustained an affirmative verdict, the action of the court would have constituted error. But the evidence upon these points was almost, if not quite, that given by the witnesses of the plaintiff, Bassinger, and was not conflicting. It is only necessary for us, therefore, to consider its legal effect. The statute is plain, positive, and peremptory. It admits of no excuse for leaving personal chattels, capable of manual delivery and removal, in the apparent possession of the vendor; nor does it admit of a construction whereby there may be a joint or concurrent possession in both vendor and vendee; nor can a case be taken out of the statute, nor can the statute be satisfied, by proving that the sale was *bona fide* and no fraud intended. Unless the purchaser can show such a substantial compliance with its terms as affords visible notice to the community of a change in the ownership of the goods, the transaction constitutes a fraud in law, and as such must be held to be void as to creditors and subsequent purchasers in good faith of the vendor.

*Cook v. Mann,* 6 Colo. 21, is cited by both parties in the controversy as a very proper construction of this statute, both finding therein principles of law announced which they construe as supporting their respective theories as to the proper disposition of the points involved in the

present controversy. They also find, as they suppose, analogous facts and circumstances, in respect to which they insist that the same rules of construction must be applied. The circumstances of that case respecting the change of possession, when carefully examined, will be found to differ widely from those appearing in the case at bar. That was the sale of a stock of goods consisting of boots and shoes. The stock was in the store-room in which Haywood, the owner, was and had been pursuing his business as a merchant. The goods sold were not removed from this store-room at the time of the sale. Haywood did not quit the store-room upon the completion of the sale, but the provisions of the statute were satisfied nevertheless. An inventory of the goods was taken, and the price ($4,000) was paid. The purchaser, Mann, took immediate possession, not only of the goods, but of the store-room in which they were situated. He assumed the lease, hired his clerks (one of them being Haywood, the former proprietor), and changed the sign by placing his own sign, "C. Y. Mann & Co.," over the door. He then devoted his time and attention to the business, personally managing the same, at the same stand, replenishing the stock when necessary, and assuming exclusive control of the business. Chief Justice Elbert, who delivered the opinion, says: "All the *indicia* of ownership usual in mercantile business were present, and there was a complete change of the control and dominion of the property." Now, it is obvious, from this statement of the case referred to, that so far as the immediate delivery of possession was concerned, and likewise with respect to the actual and continued change of possession, there was nothing colorable or uncertain. The possession was neither joint nor concurrent in the vendor and vendee, but visibly absolute in the vendee. No one could approach the store without witnessing the evidence of a change of ownership. The employment of the former proprietor in the capacity of a clerk was held to be un-

objectionable, since a clerk is not vested with the possession of the merchant's goods. If the transaction was tainted with fraud at all, it was fraud in fact, and not fraud in law. But no fraud in fact was charged. The rules of law laid down as a proper construction of the statute were:

"The vendee must take the actual possession, and the possession must be open, notorious and unequivocal; such as to apprise the community, or those who are accustomed to deal with the party, that the goods have changed hands, and that the title has passed out of the seller and into the purchaser. This must be determined by the vendee using the usual marks or *indicia* of ownership, and occupying that relation to the thing sold which owners of property generally sustain to their own property. The possession must be exclusive of the vendor. A concurrent or joint possession is not admissible."

The rules here announced are believed to be the established rules of construction of the statute quoted, and apply to all cases, so far as the facts necessary to be done *subsequent* to the purchase are concerned. These acts must be of such a character as to afford reasonable notice to the public of the change of ownership. The same acts are not required in each case that arises, but equivalent acts must be performed in order to render the sale valid. In the case cited no essential precaution seems to have been omitted.

Now, what acts did Dr. Bassinger perform, subsequent to his purchase, which afforded notice to the community that he, and not Welborn, owned these household goods. At the time of the sale Welborn was the party in possession of the house, and Dr. Bassinger and his wife were the guests of Welborn and his wife. Both families continued to reside in the house after as before the sale. How, then, did the plaintiff acquire the *actual*, *exclusive* and *visible* possession which is essen-

tial to the validity of the transaction? We have just seen how the same statute was satisfied in the purchase of a stock of goods, but we look in vain for equivalent acts performed by Dr. Bassinger in the present case. He made or kept up the fires in the furnace; he did this before as well as after the sale. He paid some of the household expenses; but to whom is not stated. He talked of his purchase with some of his neighbors; this is of no force,— the statute does not permit the transaction to rest on the declarations of the parties, nor upon acts of such character as to be insufficient to give the requisite notice to creditors. He recorded the bill of sale given him by Welborn; the law does not require or authorize such instruments to be recorded,— hence the record is no notice to creditors. Both he and Welborn say he assumed possession and control of the furniture from the time of the purchase until the levy of the attachment; but when asked what was done to manifest this to the outside world, only the above-mentioned matters, and the publicity of the sale on December 8th, could be stated. It is not sufficient that a sale is open and *bona fide*. These facts need not be disputed by a creditor. It is easier to state what Mr. Bassinger failed to do. He did not visibly or openly assume the proprietorship of the residence in which the carpets, chairs and other goods were situated. He did not accept a lease of the house, but refused to pay the rent. He did not indicate, even, by a sign upon the door, that the house No. 323 California street was the place of his residence. On the contrary, a caller would be informed by the door-plate that it was the residence of James F. Welborn. Inside, no change of the relations of the two families,— Dr. Bassinger and wife, and Mr. Welborn and wife,— or in the occupation of the house, or use of the furniture, was apparent.

Counsel for plaintiff in error relies, mainly, upon the good faith of the transaction, and cites us to respectable

and able decisions in favor of his theory of this case; but the fact that these decisions were based upon statutes dissimilar to ours — statutes not containing the peremptory requirements of section 14 of our statute of frauds — renders them inapplicable as authority in this case. His principal reliance is upon the decisions of the supreme court of the state of Pennsylvania. The statute of Pennsylvania, upon which the decisions cited were based, does not appear to have contained the provisions of section 14,— that "unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold or assigned, shall be presumed to be fraudulent and void, as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith, *and this presumption shall be conclusive.*" By reason of the absence of such statutory provisions, the courts of Pennsylvania are able to recognize, in certain cases, a constructive delivery of personal chattels, followed by a constructive or concurrent possession, and to make the validity of a sale depend upon the *bona fides* of the transaction. This distinction between the statutory rules of the two states is a very important one. The validity of the same transaction, if tested under one statute, may be decided upon the weight of testimony as to whether or not there existed therein *fraud in fact.* We do not mean to say that all cases arising under the statute might be so determined; but the other statute requires the submission of the further issue, in all cases, whether certain acts have been performed the omission of which *constitutes fraud in law*, and conclusively avoids the sale. We can, therefore, only recognize as authority in the construction of the foregoing section of our statute decisions based upon the same or similar statutory provisions. As said by Chief Justice Currey in *Woods v. Bugbey*, 29 Cal. 479:

"It is quite useless to cite decisions made under the

statutes of Elizabeth, and of New York or other states, allowing the want of an immediate delivery, and an actual and continued change of possession, to be explained or accounted for, as authoritative expositions of the rule which our statute has provided."

The decisions cited in the briefs, upon statutes substantially the same as our own, are those of California, Nevada, Montana, Vermont and Connecticut. The statute of Missouri is *similar*, as is also the rule of decision established by the courts of that state. The statutory provisions of the following states appear to be essentially different from section 14 of our statute of frauds: Pennsylvania, New York, Michigan, Maine, Massachusetts and New Hampshire.

This classification of authorities discloses that the cases tending to sustain the plaintiff's theory arose upon statutes unlike the statute under consideration. For example, in *Evans v. Scott*, 89 Pa. St. 136, the same house was occupied jointly by two brothers, one being married and the other a bachelor. The lease of the building was in the name of the married one, but both contributed to the payment of the rent. The carpets upon the floor had been purchased and laid down by the married brother; but, being unable to pay for them when the note given therefor matured, he sold them to his brother, who paid the note, and by order of the vendor received from the merchant a bill of sale of the carpets; after which they were suffered to remain in the same situation as they were previous to the sale, and to be used by both brothers as before. Held, there was a sufficient change of possession; that an actual change of possession could not be made without one brother turning the other out of doors, which was unnecessary. The court held that "the question, under such circumstances, to be submitted to the jury, is whether the change of possession was actual and *bona fide*,— not pretended, deceptive, and collusive; and whether such change of possession was all

that could have been expected of the vendor [vendee], taking into view the character and situation of the property, and the relations of the parties." This would indicate a flexible statute, which may be construed to suit the circumstances of the parties.

The rule laid down in *Hall v. Parsons*, 17 Vt. 271, was that a concurrent possession of personal property by the vendor and vendee, after the sale, renders the sale fraudulent *per se* as to the creditors of the vendor; but to have that effect the joint possession must appear to be of the same description, in the use, occupancy, and disposition of the property, as that of joint owners.

In *Norton v. Doolittle*, 32 Conn. 405, the court say: "The rule of law which requires a change of possession is one of policy. Its object is the prevention of fraud. It applies both to property attached and to property sold. The policy which dictates, and the prevention at which it aims, requires its rigid application to every case where there has not been an actual, visible, and continued change of possession.".

The supreme court of California construed a section of the statute of frauds of that state, corresponding to our section 14, in *Stevens v. Irwin*, 15 Cal. 503, the decision being subsequently approved as the true rule of construction in *Godchaux v. Mulford*, 26 Cal. 316. The rule laid down in those cases was:

"Delivery must be made of the property. The vendee must take the actual possession. That possession must be open and unequivocal, carrying with it the usual marks and indications of ownership by the vendee. It must be such as to give evidence to the world of the claims of the new owner. He must, in other words, be in the usual relation to the property which owners of goods occupy to their property. This possession must be continuous,— not taken to be surrendered back again; not formal, but substantial."

In *Brown v. Kimmel*, 67 Mo. 430, the sale of a stock of

goods in a store was held void because no *indicia* of a change of ownership were visible. The sign of the former proprietor, who made the sale, was permitted to remain on the building, and the vendor was frequently at the store after the sale, and occasionally made sales of goods himself. The court held that the retention of the old sign amounted to a declaration to the public that Dogherty was still proprietor of the store, and that it gave to the transaction an equivocal character. It was further held that the change of possession, not having been such as the statute required, as appeared from the undisputed facts of the case, should have been declared to be fraudulent as a matter at law. See, also, *Woods v. Bugbey*, 29 Cal. 466; *Lawrence v. Burnham*, 4 Nev. 361; *Hull v. Sigsworth*, 48 Conn. 258; *Claflin v. Rosenberg*, 42 Mo. 449; *Perrin v. Reed*, 35 Vt. 2; *Pierce v. Chipman*, 8 Vt. 337.

The point is made, and strongly insisted upon, by counsel for the plaintiff in error, that a compliance with the terms of the spirit and letter of the statute, in the present case, was waived by the knowledge and conduct of the creditors. They knew of the sale to the plaintiff, and practically conceded that his purchase was made in good faith. These circumstances in no manner relieved the plaintiff from a compliance with the terms of the statute. The statute being peremptory, the purchaser's failure to comply therewith placed the creditors of his vendor in the condition mentioned in the case of *Perrin v. Reed*, *supra*, where it was held that "a creditor, with full knowledge of such a transaction, has notice of a sale that in law is void as to him;" or, as held in *Lawrence v. Burnham*, *supra:* "Whether the creditor has knowledge of such a sale or not is of no consequence."

It is argued that adherence to the strict letter of the statute works a manifest hardship in the present case; that the statute should have a reasonable interpretation, according to the nature of the property conveyed and

the circumstances of the parties. Authorities to such effect are cited. That the rule operates with hardship in many cases affords to the courts no excuse for declining to enforce it. Cases decided under statutes containing the provisions of our section 14 are often preceded by the statement that the "good faith" of the transaction is not questioned; but, notwithstanding such concession, the transaction is never sustained, when resting on this proposition alone. In so far as the specific requirements of the statute are concerned, as elsewhere stated, they admit of no excuse. All courts administering this statute, so far as we are advised, hold that proof of good faith and the payment of value will not supply the place of the acts required to be performed. The cases of *Hull v. Sigsworth, Woods v. Bugbey* and *Lawrence v. Burnham, supra,* were all cases of hardship, and others of this character might be cited.

Our statute has not always been in its present peremptory form. Section 14, however, is literally identical with section 14 of the original act of October 31, 1861 (Laws 1861, p. 244), down to the closing words of the present section — "and *this presumption shall be conclusive.*" This clause in the original act was in the following form: "And shall be conclusive evidence of fraud." But the legal effect of the original section was so qualified by an additional provision as to practically alter the remedy and change the legal effect of the section. This provision was: "*Unless it shall be made to appear on the part of the person claiming under said sale or assignment that the same was made in good faith and without any intent to defraud such creditors or purchasers.*" If the latter provision still existed, the plaintiff's arguments, authorities and evidence would be in point; for it is plain that in such case the validity of plaintiff's purchase might have been determined in his favor upon proof that the same was made in good faith and without any intent to defraud creditors or purchasers. The elimination of this

qualifying provision is a strong indication that it rendered the original section inefficient to prevent fraudulent transfers of personal property. Its effect, while in force, was to authorize a recovery by the vendee in every case upon the finding of a jury that his purchase was made in good faith and without any intent to defraud creditors or subsequent purchasers. The experience of the bar, as well as the experience of the courts, is that proof of this character can be as readily produced in cases of fraudulent sales and purchases as in those in which no element of fraud exists. But by striking out this provision and resting the issue in every case upon the question of *fraud in law*, instead of *fraud in fact*, though attended with hardships in some cases, the statute was rendered effective. No pretext or excuse for non-compliance with the spirit of its provisions could then be entertained, for thereupon they became positive and peremptory, and failure to comply therewith raised a *conclusive* presumption that the sale was fraudulent and void as to creditors and to subsequent purchasers in good faith. The fifth section of the New York act of December, 1827, concerning fraudulent conveyances, etc., was almost identical with section 14 of our statute of 1861. It appears to have been passed to establish a stable rule for the prevention of frauds upon creditors, instead of the statutes of 13 and 27 Elizabeth, which had become so incumbered with exceptions by the decisions of English and American courts as to be practically of no force.

An interesting and concise statement of the effect of the above-mentioned statutes, and the adjudications thereon, is given by Chief Justice Currey in *Woods v. Bugbey, supra.* Respecting the fifth section of the New York act of December, 1827, he says: "It failed to prevent the frauds against which the statutes of 13 and 27 Elizabeth were aimed, as the judicial history of that state since the act went into effect abundantly attests." We are of opinion that "the judicial history" of both

this country and England demonstrates the wisdom of a positive rule, such as that in force in this state and the other states previously referred to, under which no latitude is given the courts to change the issue from fraud in law to fraud in fact. As held in *Norton v. Doolittle, supra,* the rule is one of *policy,* and to make it effective as a remedy it must be rigidly applied in every case where there has not been an *actual, visible* and *continued change of possession.*

The argument that a reasonable interpretation must be placed upon the statute, and that impossibilities should not be required, is recognized by us as sound. At the same time a purchaser cannot be permitted, in any case, to fold his arms after making his purchase, take no steps to complete the sale, and have his case excepted from the rule by reason of his good faith and the inconvenience attending a substantial compliance with the statute. It is true, as suggested by counsel for plaintiff in error, that the statute does not require impossibilities. A purchaser of two thousand sacks of grain cannot reasonably remove them all immediately. The purchaser of a kiln of hot brick cannot remove the brick while hot. But other acts can be substituted which will apprise the community of the change of ownership and satisfy the demands of the law. This subject was considered in *Lay v. Neville,* 25 Cal. 545, wherein the court say:

"It was not intended by the fifteenth section of the statute of frauds to make a sale void, as against the creditors and purchasers of the vendor, unless the vendee should perform in every case what might in some cases be an impossibility. * * * The acts that will constitute a delivery will vary with the different classes of cases, and will depend very much upon the character and quantity of the property sold as well as the circumstances of each particular case."

The court makes a distinction between ponderous

articles, as a block of granite or a stack of hay, and articles of small bulk, as a parcel of bullion or a sack of grain. After consideration of the various circumstances, the rule stated by the court as applicable to all cases is:

"It was intended that the vendee should immediately take, and continuously hold, the possession of the goods purchased in the manner, and accompanied with such plain and unmistakable acts of possession, control and ownership, as a prudent *bona fide* purchaser would do in the exercise of· his rights over the property, so that all persons might have notice that he owned and had possession of the property."

Upon a full consideration of the law applicable to the present case, and of the facts as shown by the plaintiff's witnesses, we are of opinion that no error was committed in withdrawing the case from the consideration of the jury. The rule is that where the uncontradicted evidence of the plaintiff fails to show such a compliance with the statute as would sustain a verdict in his favor, it is proper to direct a verdict for the defendant. *Stern v. Henley*, 68 Mo. 262; *Brown v. Kimmel, supra*. The case of *Parks v. Barney*, 55 Cal. 240, is not in point, since the evidence there strongly tended to show a compliance with the provisions of the statute.

In respect to the attempted negotiations of Mr. Decker, we fail to see how they excuse the non-performance of acts required to be done by the plaintiff.

The judgment must be affirmed.

*Affirmed.*