Reed, J.,
delivered the opinion of the court.
Plaintiffs, on the 9th day of May, 1893, sued out an attachment against one H. O. Baker, which was levied on the 16th of May, upon one of two horses at pasture some miles in the country. The proceedings were commenced before a justice of the peace. E. R. Landon intervened, and moved the court to dissolve the attachment, “on the ground that the defendant was not the owner of the property attached,” etc. A trial was had, resulting in a judgment for intervener. An appeal was taken to the county court, the defendant made default, a trial was had, resulting in a judgment for the intervener, and an appeal prosecuted to this court. The testimony was indefinite and unsatisfactory, that of the defendant being in support of the title of the intervener. He testified that he purchased the horse from one Olin, and paid for it by putting screens in buildings owned by Olin; that he bought the animal about the middle of April; that about the 1st of May he went to Olin and got a bill of sale to his wife. This was corroborated by the testimony of Olin. The defendant (Baker) further said: “ He took the mare to pasture *453 May 9th. The plaintiffs were after me at this time to pajthe debt.”
Both Baker and the intervener testified that Baker was indebted to the intervener in the sum of $100, for which the latter had had his notes for two or three years ; that on the morning of May 13th Baker and wife were returning from Aspen, met intervener at Pueblo, at 5 o’clock in the morning, and he proceeded to buy the mare, which he had never seen; that he bought from Baker when his wife was not present, the consideration being Baker’s indebtedness and $27.50, then paid in money; that Mrs. Baker was then called upon, made and delivered a bill of sale.
.. Between Baker and intervener, in giving an'account of the transaction, the evidence in regard to the notes got considerably tangled.
. Landon testified that his wife and Mrs. Baker were sisters; that Baker had owed him something like $100 for three years; and he held his notes for it; that on the morning of May 13th, when the trade was made, was the first he ever had any conversation in regard to buying the horse. “ I had nothing to do with his wife in a business way. I held four of Baker’s notes. I don’t know how much they were each. I haven’t looked at them for over two years. I don’t know what the face of the notes were. I didn't have the notes with me. I didn’t turn them over.” Baker testified: “ The notes whieh were returned to me I destroyed. No one was present when they were given to me. I tore them up and put them in the fire, after the trouble had come about the mare, while these suits were pending.”
Two witnesses, who were present at the trial before the justice of the peace, testified that both Landon and Baker gave a different account of the transaction upon that trial; that nothing was said about promissory notes, but that Baker owed Landon $100 for work; and both testified that the amount paid by Landon in money at Pueblo was $27.50, instead of $26.75, as sworn in the county court.
It is evident that Mrs. Baker never was the owner of the *454 horse ; that her pretended ownership was a ruse to prevent her husband’s creditors from taking it. It also looks as if the pretended sale to Landon was collusive and fraudulent, and concocted for the same purpose. The fraud was so patent, the evidence should have been disregarded.
The judgment must also be reversed from the fact that there was no delivery of the horse, either actual or constructive.
“Every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold and assigned, shall be presumed to be fraudulent and void, as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith, and this presumption shall be conclusive.” Gen. Stats., sec. 1523. See Bassinger v. Spangler, 9 Colo. 175; Baur v. Beall, 14 Colo. 383; Goard v. Gunn, 2 Colo. App. 66.
The judgment will be reversed and cause remanded.

Reversed.