(July 9, 1904.)

## RAPPLE v. HUGHES.

[77 Pac. 722.]

SALE OF PERSONAL PROPERTY—DELIVERY AND POSSESSION.

1. A sale of personal property is attacked as fraudulent under the provisions of section 3021, Revised Statutes of Idaho, 1887, on the grounds that it was not accompanied by an immediate delivery and followed by an actual and continued change of possession of the property transferred. Evidence examined and *held* that it is sufficient to support the findings and judgment of the court below.

2. The determination as to what constitutes immediate change and delivery and actual possession is purely a question of fact to be determined by the jury, or the court in case a jury is waived, from all the evidence in each particular case, following *Simons v. Daly,* 9 Idaho, 87, 72 Pac. 507.

(Syllabus by the court.)

APPEAL from the District Court of Lemhi County. Honorable J. M. Stevens, Judge.

From a judgment finding for plaintiff. Judgment affirmed.

The facts are stated in the opinion.

John H. Padgham and Quarles & Quarles, for Appellant.

The correct rule in cases of this kind is laid down by this court in *Harkness v. Smith*, 3 Idaho, 221, 28 Pac. 423, where it is said: "It is not enough that there is an actual delivery and an actual change of possession as between vendor and vendee, so long as the property, without legal excuse, is so placed back into the same condition and the same apparent relation to the vendor that there is no such manifest and continued change of possession as would indicate to the world that there has been a change of title." (*Norton v. Doolittle*, 32 Conn. 405; *Lawrence v. Burnham*, 4 Nev. 361, 97 Am. Dec. 540; *Wright v. McCormick*, 67 Mo. 426; *Dean v. Walkenhorst*, 64 Cal. 78, 28 Pac. 60; *Godchaux v. Mulford*, 26 Cal. 316, 85 Am. Dec. 178; *Bessinger v. Spangler*, 9 Colo. 175, 10 Pac. 809; *Hallett v. Parrish*, 5 Idaho, 496, 51 Pac. 109; *McFall v. Buckeye Granger's Warehouse Assn. et al.* (Cal.), 55 Pac. 253; *Engles v. Marshall*, 19 Cal. 320.) In the case at bar there was nothing to notify third parties of the sale or of the claims of the new owner. (*Claflin v. Rosenberg*, 42 Mo. 439, 97 Am. Dec. 336; *Herr v. Denver etc. Co.*, 13 Colo. 406, 22 Pac. 770, 6 L. R. A. 641; *Merrill v. Hurlburt*, 63 Cal. 495; *Bessinger v. Spangler*, 9 Colo. 175, 10 Pac. 810.)

H. G. Redwine and F. J. Cowen, for Respondent.

Under our view of this case there can be no question that the transfer was not fraudulent under said section 3021. At the time the sale was made, Rapple drove two miles and a half after said separator, taking "immediate possession of same," and the possession thereof remained in him continuously until levied upon by the sheriff. Rapple could have remained in possession of the separator in no other way than he did. The

kitchen in which Rapple slept at the house owned by Roche was his home. He placed the separator by his trunk, and it was just as much in his possession. The fact that the room occupied by Rapple was the kitchen used by the Roche family is one to be considered by the jury in arriving at its verdict, but it cannot be contended that this alone is conclusive, and, if it is not, the judgment appealed from must be affirmed. As was said by the supreme court of California in the case of *Claudius v. Aguirre,* 89 Cal. 501, 26 Pac. 1077: "The circumstances connected with a transfer of personal property are so varied that it would be impossible to frame a rule applicable to each case, or to determine in advance what acts would be sufficient to meet the requirements of the statute."

STOCKSLAGER, J.—This action was commenced in the probate court of Lemhi county by the plaintiff against the defendant as the sheriff of said county, in claim and delivery, alleging that the sheriff wrongfully levied upon and took possession of one certain cream separator, the property of plaintiff; that before the commencement of this action he demanded possession of said property which was refused by defendant; that the property is worth the sum of $125, and that he has been damaged by its wrongful detention in the sum of $50. Defendant denies the ownership or possession of said property of plaintiff at any time; denies that the property was worth at the time defendant took possession thereof any sum greater than $75, or that plaintiff was damaged in the sum of $50, or any other sum, for the possession of said property by defendant. Further answering defendant alleges that in December, 1902, one Haman commenced an action in the probate court against one Frank Roche to recover the sum of $64.17 for goods, chattels etc., sold by Haman to Roche, and on the sixteenth day of December, 1902, a summons was issued and served upon said Roche by defendant sheriff; also a copy of complaint. That on the eleventh day of December a trial of said cause was had in said court and judgment rendered in favor of plaintiff for the sum of $63.37 and costs. On the 13th of December, 1902, execution was issued by virtue of said judgment com-

manding defendant as sheriff of said Lemhi county to make the sum aforesaid out of the personal property of defendant Roche in that action.   That on the fifteenth day of December, 1902, defendant, as sheriff, by Charles H. Simpson, deputy sheriff, duly levied upon the cream separator, goods and chattels mentioned in the complaint, and all the right, title and interest of the said Frank Roche; that the same was in the possession of said Frank Roche at Salmon City, and was the property of the said Frank Roche, by taking said cream separator into the possession of the defendant, and the defendant by virtue of being said sheriff now holds said property, under and by virtue of such levy for the purpose of making the amount of said judgment, and avers that he has a special property therein, and denies that he wrong- fully withholds and detains said personal property from the possession of plaintiff, and denies that said plaintiff has, by reason of such possession of the defendant, been damaged in the sum of $50, or any other sum, or at all.   Alleges that Frank Roche has not paid the amount due and owing on said judg- ment.   A jury was waived and trial by the court was had. Judgment for plaintiff from which defendant appeals.

Appellant insists that there was no change in the possession of the property in controversy such as the law contemplates, or any change whatever.   The undisputed facts as disclosed by the evidence are that plaintiff was working for Frank Roche on what was known as the McDonald ranch, about two and one- half miles from Salmon City.   In his settlement with Roche he accepted a note for $90, and thereafter, on December 1st, he surrendered the $90 note and took the cream separator in payment thereof, agreeing to pay a note due "on the company" of $34—evidently meaning a note *to the company.*   And he says at that time he got a bill of sale of the machine which was in evidence, to wit: .

"Salmon, Idaho, Dec. 1, 1902.

"I have this first day of December, 1902, sold to William Rapple, subject to last note due of $33.33 to the De Laval Sep- arator, payable at Langsdorf & Company Bank, Salmon, on December 20, for ninety dollars ($90) due him for labor done this summer on the McDonald ranch.

(Signed)   "FRANK ROCHE."

The witness says the above paper was given him at the time the separator was transferred to him, and is the only evidence of title he has; that he went and got the separator the same day and delivered up the note for $90 to Roche. It was on the fifteenth day of December, 1902, that the deputy sheriff levied upon and took possession of the separator. On cross-examination the plaintiff testified that he worked on the McDonald ranch for Frank Roche and Phil Roche as a hired man; the two of them gave him a note due the next spring—May, 1903. They had the separator in the kitchen on the McDonald ranch. Garfield Roche went with plaintiff to get the separator; he is a brother of Frank Roche. They took it directly to the house of Frank Roche in Salmon and unloaded it in the kitchen of his house there, and in the room where plaintiff slept. Plaintiff was boarding with Frank Roche at the time and it was the only home he had; had his trunk there in the room. Plaintiff borrowed Frank Roche's team to go after the separator. These facts are gleaned from the evidence of the plaintiff, and none of them seem to be disputed by the appellants, hence the question, and apparently the only question, is whether there was a change in the possession of this property. Appellant very earnestly insists that owing to the fact that respondent had been working on the McDonald ranch for Roche during the summer, that he only took the cream separator from one of the places of possession of Frank Roche to another of his possession; that he used Frank Roche's team to remove it and the brother helped him, all indicating to the outside world that he was still in the employ of Frank Roche and changed the location of the separator at the instance of and for the benefit of Frank Roche.

Our attention is called to section 3021, Revised Statutes. It says: "Every transfer of personal property other than a thing in action, and every lien thereon, other than a mortgage, when allowed by law, is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who

are his creditors while he remains in possession, and the suc-
cessors in interest of such creditors, and against any persons on
whom his estate devolves in trust for the benefit of others than
himself, and against purchasers or encumbrancers in good faith
subsequent to the transfer." Counsel for appellant insists that
this section of the statute under the construction given it in
*Harkness v. Smith*, 3 Idaho, 211, 28 Pac. 423, precludes the
plaintiff from a recovery in the action. Mr. Justice Huston,
speaking for the court in that action, said: "Plaintiff brought
action of claim and delivery for the recovery of possession of a
stock of merchandise alleged to have been wrongfully taken and
unlawfully detained by defendant"; then proceeds to state the
following facts: On the twenty-first day of November, 1890, one
P. Gallagher was, and for some months prior thereto had been,
engaged in a general merchandise business in the town of Poca-
tello, Bingham county, Idaho. It appears by his own testi-
mony that at the time he entered into the business he had about
$3,000 invested therein; that shortly after, for the purpose of
erecting a store building, he borrowed $2,000. The plaintiff is
a ranch and stock man and capitalist residing at McCammon,
about twenty-five miles from Pocatello. On November 21, 1900,
Gallagher goes to McCammon, to the residence of plaintiff, and
there makes a sale of his said stock of merchandise to the plain-
tiff, who at that time held a mortgage of $4,000 on said stock
of merchandise. The price alleged to have been paid by plain-
tiff was $7,240. This included the stock and building. After
deducting the amount of the chattel mortgage plaintiff says he
paid the balance, $3,240, to Gallagher in his checks which were
paid. On the morning following the sale, plaintiff and Gallagher
went to Pocatello. The clerical force in the store at that time
consisted of a man by the name of Smith and the son and
daughter of Gallagher. Harkness (plaintiff) said to Smith
when he first went into the store on the day after the alleged
sale by Gallagher to him: "Will you work for me for the same
salary Gallagher has been paying you?" and Smith said he
would. No invoice was taken, no change was made in the
personnel of the establishment; no sign was changed. Gal-
lagher continued in charge of the business as theretofore. The

clerical force was the same, two of the employees being members of Gallagher's family. Gallagher continued to buy and order goods as before the alleged sale, except that the letter-heads were in the name of H. O. Harkness, and Gallagher signed all letters, checks, etc., "P. Gallagher, Mgr.," and this continued to be the condition of affairs up to the time of the levy of the attachment by defendant on February 25, 1891.

We do not think the facts in this case applicable to the one at bar. In the Harkness case the pretended transfer was made at McCammon, whilst the goods were at Pocatello, and no pretense of a delivery until the next day. When the pretended transfer was made the next day there was no appreciable change in any of the merchandise, the clerical force, the control or management of the business, or anything that would or could give the least intimation that there had been a change in the ownership of the business.

*Hallett v. Parrish,* 5 Idaho, 496, 51 Pac. 109, cited by appellant, involved the attempted or pretended sale of wheat in Nez Perce county. Mr. Justice Huston writes this opinion also and states the facts as follows: "On the third day of September, 1895, plaintiffs being partners under the firm name of Hallett & Morrison, purchased of one C. J. Landon, seven thousand bushels of O. K. No. 1 marketable wheat, to be delivered at top of tramway on or before sixty days; loss or damage by fire to be carried by the party of the first part. This sale was evidenced by an instrument in writing signed by C. J. Landon, attested with his seal, witnessed by Fred W. Hallett, one of the plaintiffs, and acknowledged before him as notary. On the twenty-third day of September, 1895, the defendant, as constable, levied an execution (issued by justice of the peace of said county upon a judgment against C. J. Landon) upon and seized eight hundred sacks of wheat upon the premises and in the possession of said C. J. Landon."

After this statement of facts the court, in summing up its conclusions, say: "There was no delivery nor any attempt of delivery at that time nor for quite a period thereafter. . . . . The evidence showing conclusively that there had been no deliv-

ery at the time of the sale by Landon to the plaintiffs of the wheat sued for in this action for any actual or continued change of possession thereof."

The undisputed facts in the case at bar do not bring it within the rule laid down in *Hallett v. Parrish*. It cannot be said there was no attempt at change in possession of the property in controversy in the face of the positive declaration of the plaintiff that he immediately took possession, and so remained in possession of the property until it was taken from him by the sheriff by virtue of the execution.

Counsel for appellant call our special attention to *Bassinger v. Spangler,* 9 Colo. 175, 10 Pac. 810, a Colorado case. The writer of this opinion, Mr. Chief Justice Beck, collected and discussed the decisions of a number of states containing statutes similar to our section 3021, and says: "The argument that a reasonable interpretation must be placed upon the statute, and that impossibilities should not be required, is recognized by us as sound. At the same time a purchaser cannot be permitted, in any case, to fold his arms after making his purchase, take no steps to complete the sale, and have his case excepted from the rule by reason of his good faith, and the inconvenience attending a substantial compliance with the statute. It is true, as suggested by counsel for the plaintiff in error, that the statute does not require impossibilities. A purchaser of two thousand sacks of grain cannot reasonably remove them all immediately. The purchaser of a kiln of hot brick cannot remove the brick while hot. But other acts can be substituted which will apprise the community of the change of ownership and satisfy the demands of the law." The writer cites *Lay v. Neville,* 25 Cal. 545, and quotes this language: "The acts that will constitute a delivery will vary with the different classes of cases, and will depend very much upon the character and quantity of the property sold, as well as the circumstances of each particular case." This seems to us to be the correct rule and is founded in equity and reason. It was followed in a recent case in this court—*Simons v. Daly,* 9 Idaho, 87, 72 Pac. 507. Mr. Justice Ailshie, speaking for the court, said: "While the evidence as to

the 'immediate delivery' and 'continued possession' of the prop-
erty claimed is by no means satisfactory, we are not prepared
to say that it is insufficient to support the verdict and judgment.
Every presumption is in favor of the judgment of a court of
record, and error will not be presumed. Such judgment should
not be disturbed until the appellate court is fully satisfied that
error has been committed. There was some evidence in this
case tending to show that the transfer was accompanied by im-
mediate delivery and followed by actual possession. The jury
evidently believed this evidence, and returned their verdict ac-
cordingly. We cannot disturb the judgment founded thereon
upon the grounds of insufficiency of the evidence." Again,
speaking of the question of immediate delivery and followed by
an actual and continued change of possession as required by
section 3021, Revised Statutes, the opinion says: "While this
statute seems to be very plain, and at first thought it might oc-
cur to one that no difficulty or uncertainty could arise as to its
application, s'ill, when we come to applying it to the number-
less facts, circumstances, surrounding conditions, and various
relatio¬s which the parties may sustain toward each other, the
problem accompanying any particular transaction assumes a
much more serious aspect, and we begin to question ourselves as
to what 'immediate delivery' and 'actual possession' really
mean. Certainly no fixed rule can be established as a test for
ascertaining these results. An examination of the numerous
decisions of the courts under statutes similar to our own will
at once demonstrate the futility of such an effort. It must be
conceded, we think, that these are purely questions of fact to be
determined by the jury from the evidence in each particular
case." A number of authorities are cited in support of this
conclusion. Again, it is said: "The evidence brought before
us in this case is a most forcible reminder of the difficult duty
which devolves upon a jury and trial court in passing upon
evidence so close, unsatisfactory and conflicting, and amply il-
lustrates the virtue in the oft-repeated statement that the jury
and trial court meet the witnesses face to face, and hear them
testify, and observe their demeanor, and are therefore in a
better position than the appellate court to judge of the weight

to be given to each and every statement made." Applying the rules laid down in this case to the case at bar, and what are the conditions? We find that the plaintiff testifies that he worked on the McDonald ranch for Frank Roche and his brother; that he settled with them and on settlement there was $90 due him for which he accepted a note due the next spring—he thinks in May; that after such settlement and after the note was given, he bought the property in dispute and surrendered the note in part payment and assumed the payment of an outstanding note of $33.33, due on the separator; that immediately after the purchase he took possession of the property and removed it from its place of use on the McDonald ranch to the only home he had, which was at the residence of Frank Roche in Salmon. He occupied the kitchen in Frank Roche's house, and there had his trunk and this cream separator. So far as the record shows, all his worldly possessions were in that room. We do not think the law required him to rent a room elsewhere to store his property in order to give notice to the creditors of Frank Roche that he had bought this property. For aught we know, this might have forced him to abandon his property, as the rent of a storage room until such time as he could use it or dispose of it might have been in excess of his ability to pay, with any hope of realizing on his purchase. He had removed it from its former place of use to Salmon and stored it in his room; and we think this was sufficient compliance with the law.

A trial by jury having been expressly waived by both parties in open court, the case was tried by the court, which court found that the delivery and possession was sufficient to entitle the plaintiff to recover, and we do not think his findings and judgment based upon the evidence should be disturbed.

The judgment of the lower court is affirmed. Costs are awarded to respondent.

Sullivan, C. J., and Ailshie, J., concur.